Frank S. Hedin (SBN 291289)
HEDIN LLP
357 Mission Street, 14th Floor
San Francisco, CA 94105
Telephone: (305) 357-2107
Facsimile:  (305) 200-8801
Email: fhedin@hedinllp.com

*Counsel for Plaintiffs and Putative Classes*

## UNITED STATES DISTRICT COURT FOR THE

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELA HUTCHESON; SARA LAFLER; ALUCARD TAYLOR; KAMA DELK; ERIN RADCLIFFE; MIKHAILA DIEKMANN; CHELSEA GARDNER; ANDREW STARIN; and SHARYL YEISLEY, individually and on behalf of all others similarly situated, | Case No.: **'24CV1977 JES  MMP** <br><br> **CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |
| Plaintiffs, | |
| v. | |
| VEROGEN, INC. D/B/A GEDMATCH, | |
| Defendant. | |

On behalf of themselves and all others similarly situated, Plaintiffs Angela Hutcheson, Sara Lafler, Alucard Taylor, Kama Delk, Erin Radcliffe, Mikhaila Diekmann, Chelsea Gardner, Andrew Starin, and Sharyl Yeisley, allege the following based upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters based upon the investigation

conducted by their attorneys.

## NATURE OF THE CASE

1.     This case involves Defendant's illegal disclosure of nearly two million individuals' genetic information to multiple unauthorized third parties.

2.     Lawmakers across the country have increasingly recognized the importance of maintaining individuals' privacy in their genetic information. For example, the Oregon legislature, in enacting a statute aimed at protecting genetic privacy, found that "[g]enetic information is uniquely private and personal information," and that the "improper collection, retention or disclosure of genetic information can lead to significant harm to an individual and the individual's blood relatives[.]" Or. Rev. Stat. Ann. § 192.533(1). This is so, the Oregon legislature explained, because an analysis of an individual's DNA provides information "not only about the individual, but also about blood relatives of the individual, with the potential for impacting family privacy, including reproductive decisions." Or. Rev. Stat. Ann. § 192.533(1). In enacting a similar statute, the Illinois Legislature found that "[d]espite existing laws, regulations, and professional standards which require or promote voluntary and confidential use of genetic testing information, many members of the public are deterred from seeking genetic testing because of fear that test results will be disclosed without consent in a manner not permitted by law or will be used in a discriminatory manner." 410 ILCS 513/5(2).

3.     As a result of these growing concerns, the states at issue in this case—Alaska, Illinois, New Hampshire, New Mexico, and Oregon—have each enacted a genetic privacy law that prohibits the disclosure of a person's genetic information or DNA analysis without the person's written, informed consent. *See* A.S. § 18.13.010, *et seq.*; 410 ILCS 513/1, *et seq.*; N.H. Rev. Stat. § 141-H:1, *et seq.*; N.M.S.A. 1978, § 24-21-1, *et seq.*; O.R.S. § 192.531, *et seq.* (collectively

referred to at times herein as the "State Genetics Statutes").

4.      As alleged in detail below, Defendant Verogen, Inc. d/b/a GEDmatch ("Verogen") has violated each of the State Genetics Statutes on a massive scale, having disclosed the genetic information of nearly two million individuals to multiple third parties without any of these persons' informed, written consent. In some cases, Verogen disclosed individuals' genetic information to a group of third parties even after those individuals had expressly instructed Verogen not to disclose their genetic information to that very group of third parties.

5.      Verogen operates the website www.GEDmatch.com, where it provides in-depth DNA comparison tools and services. To use the services, a person must obtain a DNA analysis from another company, download the results of that test to a DNA file, and upload the DNA file into the GEDmatch database. The DNA file contains the individual's genetic information, specifically the results of the DNA analysis. A person can upload his or her own DNA file or a DNA file of a dependent, a deceased person, a person whose DNA was extracted from an artifact, or any other living person who has specifically authorized the use of their DNA in this way. When uploading a DNA file, the user must enter the full name of the person from whom the DNA came, along with the person's gender. GEDmatch then provides a variety of tools that allow the person who uploaded the DNA file to compare it to others in the database.

6.      Verogen has amassed over 2 million DNA files from its users. It has done so, in large part, by making assurances to its users that the DNA files they upload will be disclosed *only* to the specific groups of third parties selected by them before uploading DNA files, and that their genetic information will otherwise remain absolutely private.

7.      However, as explained below, after obtaining DNA files from its

---

3

users, Verogen has repeatedly disclosed their genetic information to multiple third parties—without providing anyone notice of or obtaining anyone's consent to these disclosures—in clear violation of each of the State Genetics Statutes.

8.      First, in January 2023, Verogen disclosed the genetic information of approximately 1.8 million of its users when it sold its GEDmatch.com database to Qiagen N.V. ("Qiagen"), along with the rest of Verogen's business, for $150 million. Qiagen is a foreign company, operating under Dutch law with its registered office in Venlo, The Netherlands.[1] This sale required Verogen to provide its entire database of user-uploaded DNA files, along with all the personal information connected to each DNA file, to Qiagen.  Verogen failed to notify its users, let alone obtain any form of consent from its users, prior to disclosing their DNA files and associated personal information to Qiagen.

9.      Second, Verogen has routinely disclosed to various law enforcement entities the genetic information of its users—also without notifying, or obtaining any form of consent from, any of these individuals. Notably, many of the users whose DNA files were disclosed by Verogen to law enforcement entities had expressly instructed Verogen *not to* disclose their genetic information to law enforcement entities.

10.     Finally, Verogen has disclosed the identities of its users who underwent genetic testing and who maintained Facebook accounts to Meta via the Meta Pixel technology installed by Defendant on its website—also without notifying, or obtaining any form of consent from, any of these persons.

11.     By disclosing its users' genetic information to Qiagen, law enforcement entities, and Meta—without first obtaining its users' informed written

---

[1] United States Security and Exchange Commission, Form 6-k filing, March 31, 2023; available at https://www.sec.gov/Archives/edgar/data/1015820/000101582023000026/a2023q16-k.htm#i0ecb684e66b649ab99a27a64e98cf303_118.

CLASS ACTION COMPLAINT

consent—Defendant violated the State Genetics Statutes.

## PERTINENT STATUTORY SCHEMES

### I.    Alaska

12.    Alaska's Genetic Privacy Act provides that "a person may not . . . disclose the results of a DNA analysis unless the person has first obtained the informed and written consent of the person, or the person's legal guardian or authorized representative, for . . . disclosure." A.S. § 18.13.010(a)(1).

13.    "DNA analysis" means DNA or genetic typing and testing to determine the presence or absence of genetic characteristics in an individual, including tests of nucleic acids or chromosomes in order to diagnose or identify a genetic characteristic. A.S. § 18.13.100(2).

14.    "Person" includes a corporation, company, partnership, firm, association, organization, business trust, or society, as well as a natural person. A.S. § 01.10.060(a)(8).

15.    A person may bring a civil action against a person who collects a DNA sample from the person, performs a DNA analysis on a sample, retains a DNA sample or the results of a DNA analysis, or discloses the results of a DNA analysis in violation of this chapter. A.S. § 18.13.020. In addition to the actual damages suffered by the person, a person violating this chapter is liable to the person for damages in the amount of $5,000 or, if the violation resulted in profit or monetary gain to the violator, $100,000. *Id.*

### II.    Illinois

16.    Illinois's Genetic Privacy Information Act ("ILGIPA") provides that "genetic testing and information derived from genetic testing is confidential and privileged and may be released only to the individual tested and to persons specifically authorized" by that individual. 410 Ill. Comp. Stat. Ann. 513/15(a). The

authorization must be a "specific written legally effective authorization for release" and designate the person to whom the genetic information is being released. 410 Ill. Comp. Stat. Ann. 513/30(a)(2). It further provides that "no person may disclose the identity of any person upon whom genetic testing is performed or the results of a genetic test in a manner that permits identification of the subject of the test." 410 Ill. Comp. Stat. Ann. 513/30(a).

17.    ILGIPA defines "genetic information" as information pertaining to: (i) an individual's genetic tests; (ii) the genetic tests of family members of the individual; (iii) the manifestation of a disease or disorder in family members of such individual; or (iv) any request for, or receipt of, genetic services, or participation in clinical research which includes genetic services, by the individual or any family member of the individual. 410 ILCS 513/10, citing 45 CFR 160.103.

18.    "Genetic testing" includes direct-to-consumer commercial genetic testing. 410 ILCS 513/10.

19.    ILGIPA provides for statutory damages of $15,000 for each willful and/or reckless violation of ILGIPA or actual damages—whichever is greater—and, alternatively, damages of $2,500 for each negligent violation of ILGIPA or actual damages—whichever is greater. 410 ILCS 513/40(a)(3).

**III.    New Hampshire**

20.    New Hampshire's genetic privacy law provides that "no person shall disclose to any other person that an individual has undergone genetic testing, and no person shall disclose the results of such testing to any other person, without the prior written and informed consent of the individual, the parent, guardian, or custodian if the individual is a minor under the age of 18, or the legal guardian or conservator if the individual is an incompetent person." N.H. Rev. Stat. Ann. § 141-H:2(III).

CLASS ACTION COMPLAINT

21.    "Genetic testing" means a test, examination, or analysis which is generally accepted in the scientific and medical communities for the purpose of identifying the presence, absence, or alteration of any gene or chromosome, and any report, interpretation, or evaluation of such a test, examination, or analysis. N.H. Rev. Stat. Ann. § 141-H:1(IV).

22.    "Person" includes a human being, an association or organization, a trust, corporation, and partnership. N.H. Rev. Stat. Ann. § 141-H:1(XI).

23.    New Hampshire provides for minimum damages of $1,000 for each violation, as well as costs and reasonable legal fees. *See* N.H. Rev. Stat. Ann. § 141-H:6.

**IV.    New Mexico**

24.    New Mexico's Genetic Information Privacy Act ("NMGIPA") prohibits the "collection, retention, transmission or use of genetic information without the informed and written consent of the individual or the individual's authorized representative." N.M. Stat. Ann. § 24-21-3(B).

25.    "Genetic information" means information about the genetic makeup of an individual or members of an individual's family, including information resulting from genetic testing, genetic analysis, DNA composition, participation in genetic research or use of genetic services. N.M. Stat. Ann. § 24-21-2(D).

26.    An individual whose rights under the provisions of NMGIPA have been violated may bring a civil action for damages or other relief. The court may order a person who violates the provisions of NMGIPA to comply with those provisions and may order other appropriate relief, including actual damages, damages of up to five thousand dollars ($5,000) in addition to any economic loss if the violation results from willful or grossly negligent conduct; and reasonable attorney fees and appropriate court costs. N.M. Stat. Ann. § 24-21-6(B)-(C).

CLASS ACTION COMPLAINT

## V.    Oregon

27.    Oregon's genetic privacy statutes prohibit disclosing the "identity of an individual upon whom a genetic test has been performed or the identity of a blood relative of the individual," or "genetic information about the individual or a blood relative of the individual in a manner that permits identification of the individual." Or. Rev. Stat. Ann. § 192.539(1).

28.    "Genetic information" means information about an individual or the individual's blood relatives obtained from a genetic test. Or. Rev. Stat. Ann. § 192.531(11).

29.    "Genetic test" means a test for determining the presence or absence of genetic characteristics in an individual or the individual's blood relatives, including tests of nucleic acids such as DNA, RNA and mitochondrial DNA, chromosomes or proteins in order to diagnose or determine a genetic characteristic. Or. Rev. Stat. Ann. § 192.531(14).

30.    An individual or an individual's blood relative, representative or estate may bring a civil action against any person who violates Or. Rev. Stat. Ann. § 192.539. For a violation of § 192.539, the court shall award the greater of actual damages or:

a)  $1,000, for an inadvertent violation that does not arise out of the negligence of the defendant;

b)  $5,000, for a negligent violation;

c)  $100,000, for a knowing or reckless violation;

d)  $150,000, for a knowing violation based on a fraudulent misrepresentation; or

CLASS ACTION COMPLAINT

e)  $250,000, for a knowing violation committed with intent to sell, transfer or use for commercial advantage, personal gain or malicious harm.

Or. Rev. Stat. Ann. § 192.541.

## PARTIES

### I.    Plaintiffs

#### A.    Plaintiff Angela Hutcheson

31.    Plaintiff Hutcheson is, and at all times relevant hereto was, a resident of Cook County, Illinois and a Facebook account holder.

32.    Plaintiff Hutcheson created a GEDmatch.com account and uploaded her DNA file on GEDmatch.com in 2018, and her genetic information has remained in Defendant's database at all times between when she uploaded it and the present.

33.    Plaintiff Hutcheson has never provided informed, written consent to Defendant to disclose her genetic information or the fact she had undergone genetic testing to Qiagen, Meta, or law enforcement actors.

34.    In fact, at all relevant times, Plaintiff Hutcheson expressly told Defendant not to disclose her genetic information to law enforcement by selecting the "opt out" privacy setting for her file.

#### B.    Plaintiff Sara Lafler

35.    Plaintiff Lafler is, and at all times relevant hereto was, a resident of Cook County, Illinois and a Facebook account holder.

36.    Plaintiff Lafler created a GEDmatch.com account and uploaded her DNA file on GEDmatch.com in 2016, and her genetic information has remained in Defendant's database at all times between when she uploaded it and the present.

37.    Plaintiff Lafler has never provided informed, written consent to Defendant to disclose her genetic information or the fact she had undergone

CLASS ACTION COMPLAINT

genetic testing to Qiagen or Meta.

### C.    Plaintiff Alucard Taylor

38.    Plaintiff Taylor is, and at all times relevant hereto was, a resident of Multnomah County, Oregon and a Facebook account holder.

39.    Plaintiff Taylor created a GEDmatch.com account and uploaded his DNA file on GEDmatch.com in 2019, and his genetic information has remained in Defendant's database at all times between when he uploaded it and the present.

40.    Plaintiff Taylor has never provided informed, written consent to Defendant to disclose his genetic information or the fact he had undergone genetic testing to Qiagen, Meta, or law enforcement actors.

41.    In fact, at all relevant times, Plaintiff Taylor expressly told Defendant not to disclose his genetic information to law enforcement by selecting the "opt out" privacy setting for his file.

### D.    Plaintiff Kama Delk

42.    Plaintiff Delk is, and at all times relevant hereto was, a resident of Lane County, Oregon and a Facebook account holder.

43.    Plaintiff Delk created a GEDmatch.com account and uploaded her DNA file on GEDmatch.com in 2018, and her genetic information has remained in Defendant's database at all times between when she uploaded it and the present.

44.    Plaintiff Delk has never provided informed, written consent to Defendant to disclose her genetic information or the fact she had undergone genetic testing to Qiagen or Meta.

### E.    Plaintiff Erin Radcliffe

45.    Plaintiff Radcliffe is, and at all times relevant hereto was, a resident of Bernalillo County, New Mexico.

46.    Plaintiff Radcliffe created a GEDmatch.com account and uploaded

CLASS ACTION COMPLAINT

her DNA file, along with that of her husband and her father-in-law, to GEDmatch.com in 2015, and their genetic information has remained in Defendant's database at all times between when she uploaded the three DNA files and the present.

47. Plaintiff Radcliffe has never provided informed, written consent to Defendant to disclose her genetic information or the fact she had undergone genetic testing to Qiagen.

### F.    Plaintiff Mikhaila Diekmann

48. Plaintiff Diekmann is, and at all times relevant hereto was, a resident of Bernalillo County, New Mexico.

49. Plaintiff Diekmann created a GEDmatch.com account and uploaded her DNA file to GEDmatch.com in 2019, and her genetic information has remained in Defendant's database at all times between when she uploaded it and the present.

50. Plaintiff Diekmann has never provided informed, written consent to Defendant to disclose her genetic information or the fact she had undergone genetic testing to Qiagen.

### G.    Plaintiff Chelsea Gardner

51. Plaintiff Gardner is, and at all times relevant hereto was, a resident of Merrimack County, New Hampshire and a Facebook account holder.

52. Plaintiff Gardner created a GEDmatch.com account and uploaded her DNA file on GEDmatch.com in 2019, and her genetic information has remained in Defendant's database at all times between when she uploaded it and the present.

53. Plaintiff Gardner has never provided informed, written consent to Defendant to disclose her genetic information or the fact she had undergone genetic testing to Qiagen or Meta.

CLASS ACTION COMPLAINT

### H.    Plaintiff Andrew Starin

54.    Plaintiff Starin is, and at all times relevant hereto was, a resident of Hillsborough County, New Hampshire and a Facebook account holder.

55.    Plaintiff Starin created a GEDmatch.com account and uploaded his DNA file on GEDmatch.com in 2016 and then again in 2017, and his genetic information has remained in Defendant's database at all times between when he uploaded it and the present.

56.    Plaintiff Starin has never provided informed, written consent to Defendant to disclose his genetic information or the fact he had undergone genetic testing to Qiagen or Meta.

### I.    Plaintiff Sharyl Yeisley

57.    Plaintiff Yeisley is, and at all times relevant hereto was, a resident of Alaska.

58.    Plaintiff Yeisley created a GEDmatch.com account and uploaded her DNA file on GEDmatch.com in 2019, and her genetic information has remained in Defendant's database at all times between when she uploaded it and the present.

59.    Plaintiff Yeisley has never provided informed, written consent to Defendant to disclose her genetic information to Qiagen.

## II.    Defendant Verogen, Inc.

60.    Defendant Verogen Inc. is a company organized in Delaware with its principal place of business in San Diego, California.

61.    Verogen is a technology company that develops and supplies products for advanced DNA identifications using "next-generation sequencing" technology. It also ran and maintained the GEDmatch.com and GEDmatch Pro databases.

CLASS ACTION COMPLAINT

## JURISDICTION AND VENUE

62.    The Court has subject-matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(d)(2)(A) because there are more than 100 members of each of the proposed Classes (defined below), the aggregate amount in controversy with respect to the claim alleged on behalf of each of the proposed Classes exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one member of each of the Classes (including each of the Plaintiffs) is a citizen of a state different from Defendant.

## FACTS COMMON TO ALL CLAIMS

63.    Defendant is an online service company that provides its users the ability to research their family and genetic history through DNA data and advanced, in-depth search tools.

64.    It markets itself as a "place to explore your family history by matching DNA data you can get from a genetic DNA testing kit company like 23andMe or AncestryDNA, and then uncovering techniques used in genetic genealogy to track down relatives and learn about your ancestry."[2]

65.    To use Defendant's services, a person first must create an account on Defendant's GEDmatch.com website. The person then uploads a DNA file (obtained from another provider)—which contains the results of a DNA analysis— on the GEDmatch.com website.[3] A user of Defendant's website can upload his or her own DNA file, or the DNA files of dependents, other people who have given the user specific authorization, deceased people, or persons whose DNA has been extracted from artifacts. For each DNA file uploaded, the person must enter the full name of the person from whom the DNA came, along with that person's

---

[2] GEDmatch, "Make the Most of Your Results | Why Join – GEDmatch," available at https://www.gedmatch.com/why-join/.
[3] GEDmatch refers to each DNA file as a "DNA kit."

CLASS ACTION COMPLAINT

gender. Once a DNA file is uploaded, Defendant then provides a variety of tools on its website that allow the user to compare the uploaded DNA file, to the other DNA files in its database.

66.     Before uploading a DNA file, GEDmatch requires a user to select a privacy option for the file, and makes the following guarantees based on the privacy option selected:

1) **Private:** DNA kits will not be available for any matching comparisons with any other people (including law enforcement). No comparison results will be shown unless this privacy setting is changed by you later.

2) **Opt-in:** We will compare your DNA kit to all other kits in the GEDmatch database to find your matching genetic relatives. Kits in the database include those submitted by users undertaking personal genetic genealogy research and adoptee searches. Your kit WILL be compared with kits submitted by or on behalf of law enforcement to identify perpetrators of violent crimes or to identify human remains. The operators of GEDmatch encourage everybody to select this option.

3) **Opt-out:** We will compare your DNA kit to all other kits in the GEDmatch database to find your matching genetic relatives. Kits in the database include those submitted by users undertaking personal genetic genealogy research, adoptee searches, and users (including law enforcement) attempting to identify unidentified human remains. Your kit WILL NOT be compared with kits submitted by or on behalf of law enforcement to identify perpetrators of violent crimes.

4) **Research:** DNA kits will not be shown in match result reports generated for other kits (including kits submitted by or on behalf of law enforcement). Genealogy and Genetic Genealogy require the sharing of information. This option is provided primarily for artificially created research kits, but may be used for regular uploads if you have specific reasons for doing so.[4]

---

[4] GEDmatch, "Is GEDmatch Safe?", available at https://www.gedmatch.com/privacy-security/.

CLASS ACTION COMPLAINT

67.     If options 2, 3, or 4 are selected for a particular DNA file before it is uploaded, the user can then use Defendant's search tools to find other DNA files that have any genetic similarity to the uploaded DNA file.

68.     A user can also upload a file containing a family tree, created using another website or software program, called a "GEDcom," and can then compare that family tree to those uploaded by other users. A user can link DNA files to their family tree. Someone who has access to a person's GEDcom can see that person's entire family history—e.g. parents, siblings, children, grandparents, grandchildren, etc.—and the DNA files attached to each person in the user's family tree.

69.     GEDmatch.com also includes a related database, GEDmatch PRO Portal, that allows law enforcement to upload evidentiary DNA files from criminal investigations of violent crimes. Verogen charges law enforcement a fee per upload. Law enforcement can then run searches based on its evidentiary sample in the GEDmatch.com database. One of the tools law enforcement can use is the "One-to-Many Kinship" tool.[5] With this tool, the user can run a search that compares the uploaded DNA file with all of the DNA files in Defendant's vast database, and a search performed using this tool yields a list of users who "share some genetic similarities" with the user.[6] In other words, the individuals' DNA files that come up in this type of search are not necessarily close matches to the DNA file law enforcement is using. They simply need to "share some genetic similarity" with the primary DNA file.[7] Consequently, the use of this tool allows law enforcement to compare uploaded DNA files against all user-uploaded DNA files in Defendant's database, and gives law enforcement a list of hundreds if not

---

[5] GEDmatch, "GED Match One-to-Many Comparison," available at https://www.gedmatch.com/applications/one-to-many/.
[6] Id.
[7] A user can adjust the search parameters to narrow or widen the search results.

CLASS ACTION COMPLAINT

thousands of individuals' DNA files that share any genetic similarity to DNA related to a crime.

70.    Verogen promises its users that they will not disclose to law enforcement any DNA files except for those that the uploading users specifically authorized to be used in law enforcement search queries.  Specifically, according to Verogen, law enforcement are only permitted to access DNA files that were "opt-ed in" for law enforcement queries by the users who uploaded them (i.e., DNA files for which the uploading user selected option 2 above).

71.    To date, GEDmatch.com has amassed over 2 million DNA files from its users. It has done so, in part, by making assurances to its users that their genetic information would remain private, and that it would only be disclosed to the specific third parties that the users expressly agreed may receive such information at the time of upload.

72.    Those were false promises.  As alleged below, during the time period relevant to this action, Verogen repeatedly disclosed to multiple third parties the genetic information uploaded by Plaintiffs and its other users, without any of their written informed consent, in three primary ways.

**I.    Disclosure to Qiagen, a foreign corporation**

73.    First, Defendant violated the State Genetics Statutes by disclosing its entire database to Qiagen in connection with Qiagen's acquisition of Verogen in 2023.

74.    To monetize the genetic information in its vast GEDmatch database, in January 2023 Verogen sold its GEDmatch.com and GEDmatch PRO databases,

CLASS ACTION COMPLAINT

1    along with the rest of the company, to Qiagen for $150 million.[8]

2        75.    As part of the sale, Verogen gave Qiagen "full access to Verogen's

3    pioneering GEDmatch database and GEDmatch PRO portal."[9] Thus, Verogen

4    knowingly and purposefully disclosed to Qiagen the genetic information of every

5    individual with a DNA file in its database at that time—including the genetic

6    information of all of the Plaintiffs and members of the Classes.

7        76.    Additionally, the information Verogen sold to Qiagen included the

8    fact that each individual with a DNA file in its database had undergone genetic

9    testing, as well as all of the accompanying information gathered by Defendant that

10   was connected to each of these DNA files (including, inter alia, the first and last

11   names and email addresses of the users who had uploaded the files, and the full

12   name and gender of the person to whom the DNA file belonged). That information

13   can be used to identify Plaintiffs and the other members of the Classes as the

14   subjects of each DNA file uploaded to GEDmatch.com and as persons who had

15   undergone genetic testing.

16       77.    Verogen also sold to Qiagen the family trees, or GEDcoms, that its

17   users had uploaded. This allowed Qiagen to access the genetic information of

18   users' identified family members and the fact that these specific family members

19   had undergone genetic testing. It also allowed Qiagen to access that user's entire

20   family tree as well as any genetic information connected to those family members.

21       78.    Defendant failed to obtain informed, written consent of any of the

22   millions of individuals (including Plaintiffs and the members of the Classes) with

23

24   _____

25   [8] Press Release, Qiagen, "Qiagen completes acquisition of Verogen, strengthening leadership in Human ID/Forensics with NGS technologies" (Jan. 9, 2023), available at https://corporate.qiagen.com/English/newsroom/press-releases/press-release-details/2023/QIAGEN-Completes-Acquisition-of-Verogen-Strengthening-Leadership-in-Human-ID--Forensics-With-NGS-Technologies/default.aspx.

26   [9] *Id.*

27

CLASS ACTION COMPLAINT

genetic information in its database prior to disclosing it all to Qiagen.

79.    Verogen disclosed the genetic information of all the individuals in its database (including of Plaintiffs and the members of the Classes) for profit and commercial gain. Indeed, profit and commercial gain was the very purpose of the sale to Qiagen. The approximately 1.8 million DNA files in Verogen's GEDmatch database at the time undoubtedly added to Verogen's value in the acquisition. After the sale, Qiagen boasted of the specific purchase of the database in a press release, stating "Qiagen also gains full access to Verogen's pioneering GEDmatch database and GEDmatch PRO portal."[10] Verogen certainly benefitted financially from the disclosure of the genetic information in its database to Qiagen.

80.    Defendant's disclosures of this incredibly sensitive information to Qiagen were highly offensive to Plaintiffs and would be viewed as such by the average person.

81.    Defendant thus violated the genetic privacy laws of Alaska, Illinois, New Hampshire, New Mexico, Oregon, and California by disclosing, releasing, or transmitting to Qiagen Plaintiffs' and the Classes' genetic information without their written and informed consent.

**II.    Disclosure to Meta**

82.    Second, Defendant also violated the State Genetics Statutes by systematically disclosing the identities of its users and the fact they had undergone genetic testing to Meta, without its users' written informed consent, through its use of the Meta Pixel technology it had installed on its GEDmatch.com website.

**A.    The Meta Pixel**

83.    On February 4, 2004, Mark Zuckerberg and others launched

---

[10] *Id.*

CLASS ACTION COMPLAINT

Facebook, now known as "Meta".[11] Since then, Meta has become the world's largest social media platform. To create a Meta account, a person must provide, *inter alia*, his or her first and last name, birthdate, gender, and phone number or email.

84.    The Meta Pixel, first introduced in 2013 as the "Facebook Pixel," is a unique string of code that companies can embed on their websites to allow them to track consumers' actions and report the actions back to Meta.

85.    The Meta Pixel allows online-based companies like Defendant to build detailed profiles about their visitors by collecting information about how they interact with their websites, and to then use the collected information to service highly targeted advertising to them.

86.    Additionally, a Meta Pixel installed on a company's website allows Meta "to match . . . website visitors to their respective [Meta] User accounts."[12] Meta is able to do this because it has assigned each of its users an "FID" number: a unique and persistent identifier that allows anyone to look up the user's unique Meta profile and thus identify the user by name.[13] Then, each transmission of information made from a company's website to Meta via the Meta Pixel is accompanied by the FID of the website's visitor. Moreover, the Meta Pixel can follow a consumer to different websites and across the Internet even after clearing browser history.

87.    Meta has used the Meta Pixel to amass a vast digital database of dossiers comprised of highly detailed personally identifying information about

---

[11] Facebook, "Company Info," available at https://about.fb.com/company-info./.
[12] Meta, "Get Started – Meta Pixel," available at https://developers.facebook.com/docs/meta-pixel/get-started/.
[13] For example, Mark Zuckerberg's FID is reportedly the number "4," so logging into Facebook and typing www.facebook.com/4 in the web browser retrieves Mark Zuckerberg's Facebook page: www.facebook.com/zuck, and all of the additional personally identifiable information contained therein.

CLASS ACTION COMPLAINT

each of its billions of users worldwide, including information about all its users' interactions with any of the millions of websites across the Internet on which the Meta Pixel is installed. Meta then monetizes this Orwellian database by selling advertisers the ability to serve highly targeted advertisements to the persons whose personal information is contained within it.

88.     Simply put: if a company chooses to install the Meta Pixel on its website, both the company who installed it and Meta (the recipient of the information it transmits) are then able to "track[] the people and type of actions they take"[14] on the company's website, including whether they uploaded their genetic information and their use of the genealogical tools on GEDmatch.com.

**B.     Defendant Knowingly Used the Meta Pixel to Transmit to Meta its Users' Identities and the Fact They had Undergone Genetic Testing**

89.     Upon information and belief, from at least as early as January 2020 through at least as recently as June 2023, when a person created an account, uploaded a DNA file, and used any of the tools on the GEDmatch.com website, Defendant used the Meta Pixel technology it had installed on the website to disclose to Meta the unencrypted FID of the user along with the activities of the user on GEDmatch.com. This included information that the user had uploaded her DNA file to GEDmatch.com. In other words, GEDmatch.com disclosed to Meta the identity of the user—identified by her unique FID—and the fact that she had undergone genetic testing.

90.     With only a person's FID and the website activity, which Defendant knowingly provided to Meta, any ordinary person could learn the identity of the person to whom the FID corresponds and that they had undergone genetic testing.

---

[14] Meta, "Retargeting: How to Advertise to Existing Customers with Ads on Facebook," available at https://www.facebook.com/business/goals/retargeting?checkpoint_src=any.

91.    At all relevant times, Defendant knew that the Meta Pixel disclosed its users FID and that they had uploaded DNA files to GEDmatch.com.

92.    Upon information and belief, Facebook also received Plaintiffs' information directly through its Conversion API, which established a server-to-server data transmission from GEDmatch's Website server.

93.    Defendant intentionally programmed its website (by following step-by-step instructions from Meta's website) to include the Meta Pixel that systematically transmits to Meta the FIDs of its users, along with their activity on the website. Defendant did so to take advantage of the targeted advertising and other informational and analytical services offered by Meta. This targeted advertising and other Meta services increased Defendant's revenue. Therefore, installing the Meta Pixel to transmit users' information was done for profit, monetary gain and commercial advantage.

94.    Defendant could easily have programmed its website without the Meta Pixel. Instead, Defendant chose to install the Meta Pixel on its website and disclosed to Meta that every person with a DNA file uploaded had undergone genetic testing.

95.    Prior to transmitting its users' identities and that they had undergone genetic testing to Meta, Defendant failed to notify Plaintiffs or any Class members that it would do so, and neither Plaintiffs nor any other Class members consented (in writing or otherwise) to these practices.

96.    Defendant's disclosures of this incredibly sensitive information to Meta were highly offensive to Plaintiffs and would be viewed as such by the average person.

97.    By intentionally disclosing to Meta the identities of Plaintiffs Hutcheson, Lafler, Taylor, Delk, Gardner, and Starin and other Class members

who were enrolled in Facebook, along with the fact they had undergone genetic testing, Defendant knowingly and systematically violated the genetic privacy statutes of Illinois, New Hampshire, and Oregon listed above.

### III.    Disclosure to Law Enforcement

98.    Defendant further violated the State Genetics Statutes when it allowed law enforcement to access DNA files against the express wishes of its users.

99.    As stated above, through GEDmatch PRO Portal, law enforcement can upload evidentiary DNA files and compare them to files in the GEDmatch.com database marked as "opt in" as part of an investigation of a violent crime. One of the tools law enforcement can use is the "One-to-Many Kinship" tool.[15] With this tool, law enforcement can run a search that results in a list of DNA files of individuals who "share some genetic similarities" with the law enforcement sample.[16] The bar to be included in a law enforcement "one-to-many" search is low: the individuals' DNA files that come up in this type of search need not be close matches to the DNA file law enforcement is using. They simply need to "share some genetic similarity" with the law enforcement DNA sample.[17] Therefore, upon information and belief, the search can result in a list of hundreds or thousands of individuals' DNA files that law enforcement can then access. Further, from that list, law enforcement can evaluate possible relations and use the files to build and merge family trees and identify the most recent common ancestor.[18] In sum, GEDmatch.com's search tools give law enforcement access to

---

[15] GEDmatch, "GED Match One-to-Many Comparison," available at https://www.gedmatch.com/applications/one-to-many/.
[16] Id.
[17] A user can adjust the search parameters to narrow or widen the search results.
[18] Verogen, "SNP Typing in Universal Analysis Software and Kinship Estimation with GEDmatch PRO" (March 2021), available at https://verogen.com/wp-content/uploads/2021/03/snp-typing-uas-kinship-estimation-gedmatch-pro-tech-note-vd2020058-a.pdf.

CLASS ACTION COMPLAINT

thousands, if not hundreds of thousands, of individuals' DNA files without a warrant, and without those individuals ever being involved in or suspected of any crime.

100.   Because of the serious privacy concern this entails, Verogen guaranteed its users that law enforcement would not have access to their DNA files unless the user selected the "opt-in" privacy level for the DNA file.

101.   However, from approximately 2019 (perhaps earlier) through at least July 2023, GEDmatch had a "loophole" that allowed law enforcement or other users acting on behalf of law enforcement, to view DNA files not marked as "opt in".[19] In so doing, Defendant disclosed the DNA files of an unknown number of individuals to law enforcement not only without their consent, but against their specific wishes. The information disclosed to law enforcement included the DNA files, names, email address, DNA kit number, and the degree to which the file was related to the law enforcement evidentiary sample.[20]

102.   This was not the first time Defendant allowed law enforcement to access individuals' DNA files and other genetic information in its database against its express promises to its users. Prior to May 31, 2019, Defendant only allowed law enforcement to access the DNA files on GEDmatch.com for investigations of homicide or sexual assault. However, in November 2018, Defendant, without informing its users and without their consent, violated those promises and disclosed the genetic information of its users to law enforcement in Utah for an

---

[19] Verogen, "Notice regarding investigations into FIGG practitioners circumventing GEDmatch settings and violating Terms of Service, and actions taken" (November 2023), available at https://verogen.com/notice-regarding-investigations-into-figg-practitioners-circumventing-gedmatch-settings-and-violating-terms-of-service-and-actions-taken/#:~:text=We%20recently%20learned%20that%20a,for%20violent%20crime%20and%20homicides.
[20] Id.

CLASS ACTION COMPLAINT

investigation of a regular assault.[21] Approximately two weeks after the press broke the story, Defendant changed its terms and conditions to allow law enforcement to access its users' DNA files for crimes beyond homicide and sexual assault.[22]

103.    The Fourth Amendment to the United States' Constitution protects individuals from law enforcement viewing their genetic information at its whim. For law enforcement to obtain access to an individual's DNA file without the individual's express consent, they must first have probable cause that the person committed a crime. Then, the officer must obtain a warrant signed by a judge, who agrees that probable cause exists, before they can obtain and view a person's DNA file.

104.    Here, Defendant allowed law enforcement to circumvent those constitutional protections by giving them access to numerous individuals' DNA information without a warrant and against the individuals' express wishes.

105.    Defendant illegally disclosed these individuals' genetic information for profit, monetary gain, and commercial advantage. Defendant markets the use of its GEDmatch.com database for investigatory comparisons to police departments, charging them approximately $700 per upload.[23] The more DNA files law enforcement can access in their searches, the more valuable Defendant's service. Therefore, allowing law enforcement access to *all* the DNA files, including those that were not marked as "opt in," increased Defendant's value to law enforcement and increased its revenue. Alternatively, Verogen's disclosure

---

[21] Buzzfeed, "The Arrest of a Teen On An Assault Charge Has Sparked New Privacy Fears About DNA Sleuthing", May 15, 2019, available at https://www.buzzfeednews.com/article/peteraldhous/genetic-genealogy-parabon-gedmatch-assault (Owner Curtis Rogers admitting he allowed law enforcement to use database in violation of GEDmatch's express policies.).
[22] Compare "Terms of Service and Privacy Policy" revised May 18, 2019 (available at https://web.archive.org/web/20190627225855/https://www.gedmatch.com/tos.htm) with "Terms of Service and Privacy Policy" on May 13, 2019 (available at https://web.archive.org/web/20190507124050/https://www.gedmatch.com/tos.htm).
[23] Based on pricing information from 2022.

CLASS ACTION COMPLAINT

1    was negligent.

2    106.    Defendant's disclosures of this incredibly sensitive information to

3    law enforcement entities were highly offensive to Plaintiffs and would be viewed

4    as such by the average person.

5    107.    Defendant's disclosures to Qiagen and law enforcement violated the

6    genetic privacy laws of Alaska, Illinois, New Hampshire, New Mexico, and

7    Oregon. Defendant's disclosures to Meta violated the genetic privacy laws of

8    Illinois, New Hampshire, and Oregon.

9    **CLASS ACTION ALLEGATIONS**

10    108.    Plaintiffs Hutcheson and Lafler seek to represent a class defined as

11    all Illinois residents who had their DNA files uploaded on Defendant's

12    GEDmatch.com website and subsequently had the genetic information pertaining

13    to such DNA file disclosed by Defendant to a third party during the applicable

14    limitation period (the "Illinois Class").

15    109.    Plaintiffs Hutcheson and Lafler also seek to represent a subclass

16    defined as all Illinois residents who, while maintaining a Facebook account,

17    uploaded a DNA profile on Defendant's GEDmatch.com website and

18    subsequently had the genetic information pertaining to such DNA profile disclosed

19    by Defendant to Meta during the applicable limitation period ("the Illinois Meta

20    Subclass").

21    110.    Plaintiff Hutcheson also seeks to represent a subclass of all Illinois

22    residents who had their DNA file uploaded on Defendant's GEDmatch.com

23    website, without opting in to permit law enforcement to access such DNA file, and

24    subsequently had the genetic information pertaining to such DNA file disclosed by

25    Defendant to law enforcement or others acting on their behalf during the applicable

26    limitation period (the "Illinois Opt-Out Subclass").

27

CLASS ACTION COMPLAINT

111. Plaintiffs Delk and Taylor seek to represent a class defined as all Oregon residents who had their DNA file uploaded on Defendant's GEDmatch.com website and subsequently had the genetic information pertaining to such DNA file disclosed by Defendant to a third party during the applicable limitation period (the "Oregon Class").

112. Plaintiffs Delk and Taylor also seek to represent a subclass defined as all Oregon residents who, while maintaining a Facebook account, uploaded a DNA profile on Defendant's GEDmatch.com website and subsequently had the genetic information pertaining to such DNA profile disclosed by Defendant to Meta during the applicable limitation period (the "Oregon Meta Subclass").

113. Plaintiff Taylor also seeks to represent a subclass of all Oregon residents who had their DNA file uploaded on Defendant's GEDmatch.com website, without opting in to permit law enforcement to access such DNA file, and subsequently had the genetic information pertaining to such DNA file disclosed by Defendant to law enforcement or others acting on their behalf during the applicable limitation period (the "Oregon Opt-Out Subclass").

114. Plaintiffs Diekmann and Radcliffe seek to represent a class defined as all New Mexico residents who had their DNA file uploaded on Defendant's GEDmatch.com website and subsequently had the genetic information pertaining to such DNA file disclosed by Defendant to a third party during the applicable limitation period (the "New Mexico Class").

115. Plaintiffs Gardner and Starin seek to represent a class defined as all New Hampshire residents who had their DNA file uploaded on Defendant's GEDmatch.com website and subsequently had the genetic information pertaining to such DNA file disclosed by Defendant to a third party during the applicable limitation period (the "New Hampshire Class").

CLASS ACTION COMPLAINT

116.    Plaintiffs Gardner and Starin also seek to represent a subclass defined as all New Hampshire residents who, while maintaining a Facebook account, uploaded a DNA profile on Defendant's GEDmatch.com website and subsequently had the genetic information pertaining to such DNA profile disclosed by Defendant to Meta during the applicable limitation period (the "New Hampshire Meta Subclass").

117.    Plaintiff Yeisley seeks to represent a class defined as all Alaska residents who had their DNA file uploaded on Defendant's GEDmatch.com website and subsequently had the genetic information pertaining to such DNA file disclosed by Defendant during the applicable limitation period (the "Alaska Class").

118.    Plaintiffs reserve the right to modify the class definition or add sub-classes as necessary prior to filing a motion for class certification.

119.    The above-defined classes are referred to collectively at times herein as the "Classes."

120.    Members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Classes number in at least the hundreds of thousands. The precise number of members of the Classes and their identities are unknown to Plaintiff at this time but may be determined through discovery. Members of the Classes may be notified of the pendency of this action by mail and/or publication through the membership records of Defendant.

121.    Common questions of law and fact exist for all members of the Classes and predominate over questions affecting only individual class members. Common legal and factual questions include, but are not limited to:

(a) Whether Defendant disclosed Plaintiffs' and the members of the

CLASS ACTION COMPLAINT

Classes' genetic information to Qiagen;

(b) Whether Defendant disclosed Plaintiffs' and the members of Classes' identities and that they had undergone genetic testing to Meta;

(c) Whether Defendant disclosed Plaintiffs' and members of the Classes' genetic information to law enforcement actors;

(d) Whether the conduct described constitutes a violation of A.S. § 18.13.010, *et seq.*;

(e) Whether the conduct described constitutes a violation of 410 ILCS 513/1, *et seq.*;

(f) Whether the conduct described constitutes a violation of N.H. Rev. Stat. § 141-H:1, *et seq.*;

(g) Whether the conduct described constitutes a violation of N.M.S.A. 1978, § 24-21-1, *et seq.*;

(h) Whether the conduct described constitutes a violation of O.R.S. § 192.531, *et seq.*;

(i) Whether the disclosures were willful, negligent, intentional, or reckless;

(j) Whether the disclosures were committed with the intent to sell, transfer or use for commercial advantage, or resulted in profit or monetary gain; and

(k) Whether Plaintiffs and the Classes are entitled to damages and injunctive relief.

122.    The named Plaintiffs' claims are typical of the claims of the members of the Classes in that the named Plaintiff and the members of the Classes suffered invasions of their statutorily protected rights to genetic privacy as a result of Defendant's disclosure of their genetic information to third parties without proper

CLASS ACTION COMPLAINT

consent.

123.   Plaintiffs are adequate representatives of the Classes because their interests do not conflict with the interests of the members of the Classes they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously.  Plaintiffs and counsel will fairly and adequately protect the interests of members of the Classes.

124.   The class mechanism is superior to other available means for the fair and efficient adjudication of Classes members' claims.  Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by this case's complex legal and factual issues.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Violation of A.S. § 18.13.010, *et seq.*
### (By Plaintiff Yeisley, Individually and on Behalf of the Alaska Class)

125.   Plaintiff Yeisley incorporates by reference and re-alleges all paragraphs above.

126.   Plaintiff Yeisley is domiciled and suffered injury in Alaska.

CLASS ACTION COMPLAINT

127. Plaintiff Yeisley brings her claims individually and on behalf of the members of the Alaska Class.

128. A.S. § 18.13.010, *et seq.*, prohibits a person or corporation from disclosing the results of a DNA analysis without informed and written consent.

129. Plaintiff and the Alaska Class members uploaded or had another upload their DNA analysis results to GEDmatch.com. They also provided accompanying personal identifying information, including at least their names.

130. The information Defendant obtained from Plaintiff and the Class members is the type of information protected by A.S. § 18.13.010, *et seq*.

131. Defendant disclosed Plaintiff's and the Alaska Class members' DNA analysis results to Qiagen without their written informed consent. In doing so, Defendant violated A.S. § 18.13.010, *et seq.*

132. Defendant's violation resulted in profit or monetary gain. Defendant made $150 million in its sale to Qiagen, which was in part due to the value of the genetic information in the GEDmatch.com database. Additionally, Defendant's practice of allowing law enforcement to access the genetic information of the users who had expressly "opted out" of law enforcement access increased the value of its database to law enforcement and thus, its profit from law enforcement customers.

133. Based upon Defendant's violation of A.S. § 18.13.010, *et seq.*, Plaintiff and members of the Alaska Class are entitled to (1) an injunction requiring Defendant to cease disclosing Plaintiff's and the Alaska Class members' genetic information without written, informed consent, and withdraw the genetic information disclosed to law enforcement and Qiagen, (2) statutory damages in the amount of $100,000 per violation to Plaintiff and the Alaska Class members for the violations that resulted in profit or monetary gain, or statutory damages in the amount of $5,000 per violation if the Court finds the violations were not for profit

CLASS ACTION COMPLAINT

or monetary gain, (3) an award of punitive damages or exemplary damages, and (4) an award of reasonable attorneys' fees, court costs, and reasonable expenses.

## SECOND CAUSE OF ACTION
### Violation of 410 ILCS 513/1, *et seq*.
**(By Plaintiffs Hutcheson and Lafler, Individually and on Behalf of the Illinois Class and Meta Subclass, and by Hutcheson, Individually and on Behalf of the Illinois Opt-Out Subclass)**

134.    Plaintiffs Hutcheson and Lafler incorporate by reference and re-allege all paragraphs above.

135.    Plaintiffs Hutcheson and Lafler are domiciled and suffered injury in Illinois.

136.    Plaintiffs Hutcheson and Lafler brings their claims individually and on behalf of the members of the Illinois Class. Plaintiff Hutcheson also brings her claims on behalf of the members of the Illinois Subclass.

137.    Defendant is a corporation and is thus a "person" under 410 ILCS 513/15.

138.    Illinois's GIPA, 410 ILCS 513/1, *et seq.*, prohibits disclosing a person's genetic information or the identity of any person upon whom a genetic test is performed without informed, written consent. The consent must be given in a specific written legally effective authorization and designate the person to whom the information will be released.

139.    "Genetic information" includes the individual's genetic tests as well as the genetic tests of family members of the individual. 410 ILCS 513/10, citing 45 C.F.R. § 160.103.

140.    Plaintiffs Hutcheson and Lafler and the Illinois Class members uploaded or had another upload their genetic information in the form of DNA data to GEDmatch.com. They also provided accompanying personal identifying

CLASS ACTION COMPLAINT

information, including at least their names. Plaintiff Hutcheson and the Illinois Opt-Out Subclass members did not opt in or consent to law enforcement having access to their genetic information.

141.   The information Defendant obtained from Plaintiffs and the Class members is the type of information protected by 410 ILCS 513/1, *et seq.*

142.   As described above, Defendant disclosed Plaintiffs' and the putative Illinois Class members' genetic information, along with their identities and the fact they had undergone genetic testing to Qiagen without their written, informed consent. Defendant further disclosed Plaintiffs' and the Illinois Meta Subclass members' genetic information, along with their identities and the fact they had undergone genetic testing, to Meta without their written, informed consent. Defendant also disclosed Plaintiff Hutcheson's and the Illinois Opt-Out Subclass members' genetic information, along with their identities and the fact they had undergone genetic testing to law enforcement actors without their written, informed consent and against their express wishes. All such disclosures violated 410 ILCS 513/1, *et seq.*

143.   Plaintiffs Hutcheson and Lafler and the Illinois Class members are aggrieved by Defendant's violations.

144.   Defendant disclosed the genetic information of the Plaintiffs and the Illinois Class and Subclass members intentionally or recklessly, but at very least, negligently. Defendant knowingly sold its entire database of genetic information to Qiagen for financial gain, using the genetic information in the database to increase the sale price. That conduct constitutes an intentional and reckless disclosure of its users' genetic information without written, informed consent. Defendant also intentionally disclosed its users' identities and the fact that they had genetic testing performed to Meta to improve its advertising, and thus, increase its profits. Finally,

CLASS ACTION COMPLAINT

Defendant intentionally or recklessly violated GIPA by establishing, maintaining, and failing to fix the loophole that allowed law enforcement to view the genetic information of the individuals who had expressly "opted out" of law enforcement access.

145.    Based upon Defendant's violations, Plaintiffs and the Illinois Class and Subclass members are entitled to statutory damages of $15,000 for each willful and/or reckless violation of GIPA or actual damages—whichever is greater—and, alternatively, damages of $2,500 for each negligent violation of GIPA or actual damages—whichever is greater—along with reasonable attorney's fees and costs. 410 ILCS 513/40(a)(3).

### THIRD CAUSE OF ACTION
### Violation of N.H. Rev. Stat. § 141-H:1, *et seq.*;
### (By Plaintiffs Gardner and Starin, Individually and on Behalf of the New Hampshire Class and Meta Subclass)

146.    Plaintiffs Gardner and Starin incorporate by reference and re-allege all paragraphs above.

147.    Plaintiffs Gardner and Starin are domiciled and suffered injury in New Hampshire.

148.    Plaintiffs Gardner and Starin bring their claims individually and on behalf of the members of the New Hampshire Class.

149.    N.H. Rev. Stat. Ann. § 141-H:2 IV prohibits disclosing to any other person that "an individual has undergone genetic testing," or the results of any genetic testing without prior written and informed consent.

150.    Plaintiffs and the New Hampshire Class members uploaded or had another upload their genetic information to GEDmatch.com. They also provided accompanying personal identifying information, including at least their names and email addresses.

CLASS ACTION COMPLAINT

151.    The information Defendant obtained from Plaintiffs and the Class members is the type of information protected by N.H. Rev. Stat. § 141-H:1, *et seq*.

152.    As shown above, Defendant disclosed Plaintiffs' and the putative New Hampshire Class members' genetic information, along with their identities and the fact that they had undergone genetic testing to Qiagen without their written informed consent. Defendant further disclosed Plaintiffs' and the New Hampshire Meta Subclass members' genetic information, along with their identities and the fact that they had undergone genetic testing, to Meta without their written informed consent. These disclosures violated N.H. Rev. Stat. § 141-H:1, *et seq*.

153.    Plaintiffs and the New Hampshire Class and Subclass members have been aggrieved by Defendant's above-described violations of their statutorily protected rights to privacy of their genetic information as set forth in N.H. Rev. Stat. Ann. § 141-H:1, *et seq*.

154.    Based upon Defendant's violations, Plaintiffs and the New Hampshire Classes are entitled to damages in the amount of at least $1,000 for each violation, and costs and reasonable legal fees.

## FOURTH CAUSE OF ACTION
### Violation of N. M. S. A. 1978, § 24-21-1, *et seq.*;
### (By Plaintiffs Radcliffe and Diekmann, Individually and on Behalf of the New Mexico Class)

155.    Plaintiffs Radcliffe and Diekmann incorporate by reference and re-allege all paragraphs above.

156.    Plaintiffs Radcliffe and Diekmann are domiciled and suffered injury in New Mexico.

157.    Plaintiffs Radcliffe and Diekmann bring their claim individually and on behalf of the members of the New Mexico Class.

CLASS ACTION COMPLAINT

158.    N. M. S. A. 1978, § 24-21-1, *et seq.* prohibits transmitting genetic information of an individual without informed and written consent. "Genetic information" includes information about the genetic makeup of an individual, or the individual's family members.

159.    Plaintiffs and the New Mexico Class members uploaded or had another upload their genetic information to GEDmatch.com. They also provided accompanying personal identifying information, including at least their names and email addresses.

160.    The information Defendant obtained from Plaintiff and the Class members is the type of information protected by N.M.S.A. 1978, § 24-21-1, *et seq.*

161.    As shown above, Defendant disclosed Plaintiffs' and the putative New Mexico Class members' genetic information to Qiagen without their written, informed consent. This disclosure violated the rights of Plaintiff and the New Mexico Class members under N. M. S. A. 1978, § 24-21-1, *et seq.*

162.    Defendant's disclosures resulted from willful or grossly negligent conduct. Defendant knowingly disclosed its entire database of genetic information to Qiagen for financial gain and used it to increase the value of the sale.

163.    Based upon Defendant's violations, Plaintiffs and the New Mexico Class are entitled to damages in the amount of $5,000 for each violation, in addition to any economic loss as the violations resulted from willful or grossly negligent conduct and costs and reasonable legal fees. N. M. S. A. 1978, § 24-21-6.

CLASS ACTION COMPLAINT

### FIFTH CAUSE OF ACTION
### Violation of O.R.S. § 192.531, *et seq.*
### (Plaintiffs Delk and Taylor, Individually and on Behalf of the Oregon Class and Meta Subclass, and by Plaintiff Taylor, Individually and on Behalf of the Oregon Opt-Out Subclass)

164.    Plaintiffs Delk and Taylor incorporate by reference and re-allege all paragraphs above.

165.    Plaintiffs Delk and Taylor are domiciled and suffered injury in Oregon.

166.    Plaintiffs Delk and Taylor brings their claim individually and on behalf of the members of the Oregon Class and Meta Subclass. Plaintiff Taylor also brings his claim on behalf of the Oregon Opt-Out Subclass.

167.    Oregon's genetic privacy statute prohibits disclosing "the identify of an individual upon whom a genetic test has been performed, or the identify of a blood relative of the individual, or to disclose genetic information about the individual or a blood relative of the individual in a manner that permits identification of the individual." Or. Rev. Stat. Ann. § 192.539(1).

168.    Plaintiffs and the Oregon Class members uploaded or had another upload their genetic information to GEDmatch.com. They also provided accompanying personal identifying information, including at least their names and email addresses. Plaintiff Taylor and the Oregon Opt-Out Subclass members did not opt in or consent to law enforcement having access to their genetic information.

169.    The information Defendant obtained from Plaintiff and the Class and Subclass members is the type of information protected by O.R.S. § 192.531, *et seq.*

170.    As shown above, Defendant disclosed Plaintiffs' and the Oregon Class members' genetic information to Qiagen without their written, informed consent. Defendant also disclosed the identities of Plaintiffs and the Oregon Meta Subclass

CLASS ACTION COMPLAINT

members along with the fact that they have had genetic tests performed to Meta without their informed consent.  Defendant further disclosed Plaintiff Taylor's and the Oregon Opt-Out Subclass members' genetic information to law enforcement actors without their written informed consent and against their express wishes. In so doing, Defendant violated O.R.S. § 192.539.

171.    Defendant's disclosures were committed with the intent to sell, transfer or use the genetic information for commercial advantage. Alternatively, the disclosures were knowing or reckless, or at least negligent. The sale of Verogen and the GEDmatch.com database to Qiagen for $150 million was exactly that—a sale and transfer of every user's genetic information for commercial advantage. Similarly, Defendant knowingly disclosed its users' identities and the fact that they had genetic testing performed to Meta to improve Defendant's advertising, and thus, increase profits. Finally, Defendant allowed law enforcement to access the genetic information of the users who had expressly "opted out" of law enforcement access to increase its profit from law enforcement uploads.

172.    Plaintiffs' and the Oregon Class and Subclass members' right to genetic privacy have been violated by Defendant's above-described disclosures.

173.    Based upon Defendant's violations, Plaintiffs and the Oregon Class and Subclass members are entitled to damages in the amount of $250,000 for each knowing violation committed with the intent to sell, transfer, or use for commercial advantage, $100,000 for each knowing or reckless violation, $5,000 for each negligent violation, and $1,000 for each inadvertent violation that does not arise out of negligence of the defendant. They are also entitled to costs and reasonable legal fees. Or. Rev. Stat. Ann. § 192.541.

CLASS ACTION COMPLAINT

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of all others similarly situated, seek a judgment against Defendant Verogen Inc. as follows:

A.    For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Classes and Plaintiff's attorneys as Class Counsel to represent the Classes;

B.    For an order declaring that Defendant's conduct violates the statutes referenced above;

C.    For an order finding in favor of Plaintiffs and the Classes and against Defendant on all counts asserted herein;

D.    For all injunctive release the court finds appropriate;

E.    For compensatory, statutory, and punitive damages in amounts stated above and to be determined by the Court and/or jury;

F.    For prejudgment interest on all amounts awarded; and

G.    For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees and expense and costs of suit.

CLASS ACTION COMPLAINT

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated: October 24, 2024                    Respectfully Submitted,

**HEDIN LLP**

By:   _/s/ Frank S. Hedin_
Frank S. Hedin (SBN 291289)
**HEDIN LLP**
357 Mission Street, 14th Floor
San Francisco, CA 94105
Telephone:   (305) 357-2107
Facsimile:     (305) 200-8801
E-Mail:        fhedin@hedinllp.com

*Counsel for Plaintiffs and Putative Class*

CLASS ACTION COMPLAINT