Frank S. Hedin (SBN 291289)
HEDIN LLP
535 Mission Street, 14th Floor
San Francisco, CA 94105
Telephone: (305) 357-2107
Facsimile:  (305) 200-8801
Email: fhedin@hedinllp.com

*Counsel for Plaintiffs and Putative Classes*

# UNITED STATES DISTRICT COURT FOR THE

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELA HUTCHESON; SARA LAFLER; ALUCARD TAYLOR; KAMA DELK; ERIN RADCLIFFE; MIKHAILA DIEKMANN; CHELSEA GARDNER; ANDREW STARIN; SHARYL YEISLEY; and ERICA NATHAN, individually and on behalf of all others similarly situated, | Case No.: 24-CV-1977-JES/MMP <br><br> **AMENDED CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |
| Plaintiffs, | |
| v. | |
| VEROGEN, INC. D/B/A GEDMATCH; and QIAGEN NORTH AMERICAN HOLDINGS, INC. | |
| Defendants. | |

On behalf of themselves and all others similarly situated, Plaintiffs Angela Hutcheson, Sara Lafler, Alucard Taylor, Kama Delk, Erin Radcliffe, Mikhaila Diekmann, Chelsea Gardner, Andrew Starin, Sharyl Yeisley, and Erica Nathan allege the following based upon personal knowledge as to themselves and their

own acts, and upon information and belief as to all other matters based upon the investigation conducted by their attorneys.

## **NATURE OF THE CASE**

1.     This case involves Defendant Verogen, Inc.'s illegal disclosure of nearly two million individuals' genetic information to multiple unauthorized third parties, including Defendant Qiagen North American Holdings, Inc. ("Qiagen"). It also involves Qiagen unlawfully compelling the disclosure of, obtaining, retaining, and using this genetic information for its own commercial advantage.

2.     Lawmakers across the country have increasingly recognized the importance of maintaining individuals' privacy in their genetic information. For example, the Oregon legislature, in enacting a statute aimed at protecting genetic privacy, found that "[g]enetic information is uniquely private and personal information," and that the "improper collection, retention or disclosure of genetic information can lead to significant harm to an individual and the individual's blood relatives[.]" Or. Rev. Stat. Ann. § 192.533(1). This is so, the Oregon legislature explained, because an analysis of an individual's DNA provides information "not only about the individual, but also about blood relatives of the individual, with the potential for impacting family privacy, including reproductive decisions." Or. Rev. Stat. Ann. § 192.533(1). In enacting a similar statute, the Illinois Legislature found that "[d]espite existing laws, regulations, and professional standards which require or promote voluntary and confidential use of genetic testing information, many members of the public are deterred from seeking genetic testing because of fear that test results will be disclosed without consent in a manner not permitted by law or will be used in a discriminatory manner." 410 ILCS 513/5(2).

3.     As a result of these growing concerns, the states at issue in this case—Alaska, Illinois, New Hampshire, New Mexico, and Oregon—have each

AMENDED CLASS ACTION COMPLAINT

enacted a genetic privacy law that prohibits the disclosure of a person's genetic information or DNA analysis without the person's written, informed consent. *See* A.S. § 18.13.010, *et seq.*; 410 ILCS 513/1, *et seq.*; N.H. Rev. Stat. § 141-H:1, *et seq.*; N.M.S.A. 1978, § 24-21-1, *et seq.*; O.R.S. § 192.531, *et seq.* (collectively referred to at times herein as the "State Genetics Statutes"). Further, the genetic privacy statutes of Illinois and Oregon prohibit compelling the disclosure of genetic information without written, informed consent; Alaska prohibits retaining genetic information without written, informed consent; and New Mexico prohibits obtaining, retaining, or using genetic information without written, informed consent.

4.    As alleged in detail below, Defendant Verogen, Inc. d/b/a GEDmatch ("Verogen") has violated each of the State Genetics Statutes on a massive scale, having disclosed the genetic information of nearly two million individuals to multiple third parties without any of these persons' informed, written consent. In some cases, Verogen disclosed individuals' genetic information to a group of third parties even after those individuals had expressly instructed Verogen not to disclose their genetic information to that very group.

5.    Verogen operates the website www.GEDmatch.com, where it provides in-depth DNA comparison tools and services. To use the services, a person must obtain a DNA analysis from another company, download the results of that test to a DNA file, and upload the DNA file into the GEDmatch database. The DNA file contains the individual's genetic information, specifically the results of the DNA analysis. A person can upload his or her own DNA file or a DNA file of a dependent, a deceased person, a person whose DNA was extracted from an artifact, or any other living person who has specifically authorized the use of their DNA in this way. When uploading a DNA file, the user must enter the full name

AMENDED CLASS ACTION COMPLAINT

of the person from whom the DNA came, along with the person's gender. GEDmatch then provides a variety of tools that allow the person who uploaded the DNA file to compare it to others in the database.

6.      Verogen has amassed over 2 million DNA files from its users. It has done so, in large part, by making assurances to its users that the DNA files they upload will be disclosed *only* to the specific groups of third parties selected by them before uploading DNA files, and that their genetic information will otherwise remain absolutely private.

7.      However, as explained below, after obtaining DNA files from its users, Verogen has repeatedly disclosed their genetic information to multiple third parties—without providing anyone notice of or obtaining anyone's consent to these disclosures—in clear violation of each of the State Genetics Statutes.

8.      First, in January 2023, Verogen disclosed the genetic information of approximately 1.8 million of its users when it sold its GEDmatch.com database to Qiagen, along with the rest of Verogen's business, for $150 million. Qiagen is a foreign company, operating under Dutch law with its registered office in Venlo, The Netherlands.[1] This sale required Verogen to provide its entire database of user-uploaded DNA files, along with all the personal information connected to each DNA file, to Qiagen.  Verogen failed to notify its users, let alone obtain any form of consent from its users, prior to disclosing their DNA files and associated personal information to Qiagen.

9.      Second, Verogen has routinely disclosed to various law enforcement entities the genetic information of its users—also without notifying, or obtaining any form of consent from, any of these individuals. Notably, many of the users

---

[1] United States Security and Exchange Commission, Form 6-k filing, March 31, 2023; available at https://www.sec.gov/Archives/edgar/data/1015820/000101582023000026/a2023q16-k.htm#i0ecb684e66b649ab99a27a64e98cf303_118.

AMENDED CLASS ACTION COMPLAINT

whose DNA files were disclosed by Verogen to law enforcement entities had expressly instructed Verogen *not to* disclose their genetic information to law enforcement entities.

10.    Finally, Verogen has disclosed the identities of its users who underwent genetic testing and who maintained Facebook accounts to Meta via the Meta Pixel technology installed by Verogen on its website—also without notifying, or obtaining any form of consent from, any of these persons.

11.    By disclosing its users' genetic information to Qiagen, law enforcement entities, and Meta—without first obtaining its users' informed written consent—Verogen violated the State Genetics Statutes.

12.    Similarly, Defendant Qiagen compelled the disclosure of the genetic information of the nearly two million individuals in Verogen's GEDmatch.com database as part of its $150 million purchase of Verogen. Qiagen's compulsion of this vast database of genetic information was not accidental. Rather, Qiagen required Verogen to include the database in the deal and to give Qiagen full access to the genetic information contained within for its own commercial advantage, enhancing Qiagen's genetic collection, preparation, and testing services it offers to law enforcement agencies and forensic teams. Qiagen did so without the written, informed consent of any of the individuals with genetic information in the database. Qiagen further retained and used the genetic information for profit without the written and informed consent of those individuals. Qiagen's conduct violated the genetic privacy laws of Alaska, Illinois, New Mexico, and Oregon.

## PERTINENT STATUTORY SCHEMES

### I.    Alaska

13.    Alaska's Genetic Privacy Act provides that "a person may not . . . retain a DNA sample or the results of a DNA analysis, or disclose the results of a

AMENDED CLASS ACTION COMPLAINT

DNA analysis unless the person has first obtained the informed and written consent of the person, or the person's legal guardian or authorized representative, for . . . disclosure." A.S. § 18.13.010(a)(1).

14.    "DNA analysis" means DNA or genetic typing and testing to determine the presence or absence of genetic characteristics in an individual, including tests of nucleic acids or chromosomes in order to diagnose or identify a genetic characteristic. A.S. § 18.13.100(2).

15.    "Person" includes a corporation, company, partnership, firm, association, organization, business trust, or society, as well as a natural person. A.S. § 01.10.060(a)(8).

16.    A person may bring a civil action against a person who collects a DNA sample from the person, performs a DNA analysis on a sample, retains a DNA sample or the results of a DNA analysis, or discloses the results of a DNA analysis in violation of this chapter. A.S. § 18.13.020. In addition to the actual damages suffered by the person, a person violating this chapter is liable to the person for damages in the amount of $5,000 or, if the violation resulted in profit or monetary gain to the violator, $100,000. *Id.*

**II.    Illinois**

17.    Illinois's Genetic Privacy Information Act ("ILGIPA") provides that "genetic testing and information derived from genetic testing is confidential and privileged and may be released only to the individual tested and to persons specifically authorized" by that individual. 410 Ill. Comp. Stat. Ann. 513/15(a). The authorization must be a "specific written legally effective authorization for release" and designate the person to whom the genetic information is being released. 410 Ill. Comp. Stat. Ann. 513/30(a)(2). It further provides that "no person may disclose or be compelled to disclose the identity of any person upon whom genetic testing is

performed or the results of a genetic test in a manner that permits identification of the subject of the test." 410 Ill. Comp. Stat. Ann. 513/30(a).

18.    ILGIPA defines "genetic information" as information pertaining to: (i) an individual's genetic tests; (ii) the genetic tests of family members of the individual; (iii) the manifestation of a disease or disorder in family members of such individual; or (iv) any request for, or receipt of, genetic services, or participation in clinical research which includes genetic services, by the individual or any family member of the individual. 410 ILCS 513/10, citing 45 CFR 160.103.

19.    "Genetic testing" includes direct-to-consumer commercial genetic testing. 410 ILCS 513/10.

20.    ILGIPA provides for statutory damages of $15,000 for each willful and/or reckless violation of ILGIPA or actual damages—whichever is greater—and, alternatively, damages of $2,500 for each negligent violation of ILGIPA or actual damages—whichever is greater. 410 ILCS 513/40(a)(3).

**III.    New Hampshire**

21.    New Hampshire's genetic privacy law provides that "no person shall disclose to any other person that an individual has undergone genetic testing, and no person shall disclose the results of such testing to any other person, without the prior written and informed consent of the individual, the parent, guardian, or custodian if the individual is a minor under the age of 18, or the legal guardian or conservator if the individual is an incompetent person." N.H. Rev. Stat. Ann. § 141-H:2(III).

22.    "Genetic testing" means a test, examination, or analysis which is generally accepted in the scientific and medical communities for the purpose of identifying the presence, absence, or alteration of any gene or chromosome, and any

report, interpretation, or evaluation of such a test, examination, or analysis. N.H. Rev. Stat. Ann. § 141-H:1(IV).

23.    "Person" includes a human being, an association or organization, a trust, corporation, and partnership. N.H. Rev. Stat. Ann. § 141-H:1(XI).

24.    New Hampshire provides for minimum damages of $1,000 for each violation, as well as costs and reasonable legal fees. *See* N.H. Rev. Stat. Ann. § 141-H:6.

### IV.    New Mexico

25.    New Mexico's Genetic Information Privacy Act ("NMGIPA") prohibits the "collection, retention, transmission or use of genetic information without the informed and written consent of the individual or the individual's authorized representative." N.M. Stat. Ann. § 24-21-3(B). It further prohibits "obtain[ing] genetic information . . . without first obtaining informed and written consent from the individual or the individual's authorized representative." *Id.* at § 24-21-3(A).

26.    "Genetic information" means information about the genetic makeup of an individual or members of an individual's family, including information resulting from genetic testing, genetic analysis, DNA composition, participation in genetic research or use of genetic services. N.M. Stat. Ann. § 24-21-2(D).

27.    An individual whose rights under the provisions of NMGIPA have been violated may bring a civil action for damages or other relief. The court may order a person who violates the provisions of NMGIPA to comply with those provisions and may order other appropriate relief, including actual damages, damages of up to five thousand dollars ($5,000) in addition to any economic loss if the violation results from willful or grossly negligent conduct; and reasonable attorney fees and appropriate court costs. N.M. Stat. Ann. § 24-21-6(B)-(C).

AMENDED CLASS ACTION COMPLAINT

## V.    Oregon

28.    Oregon's genetic privacy statutes prohibit disclosing or compelling the disclosure of the "identity of an individual upon whom a genetic test has been performed or the identity of a blood relative of the individual," or "genetic information about the individual or a blood relative of the individual in a manner that permits identification of the individual." Or. Rev. Stat. Ann. § 192.539(1).

29.    "Genetic information" means information about an individual or the individual's blood relatives obtained from a genetic test. Or. Rev. Stat. Ann. § 192.531(11).

30.    "Genetic test" means a test for determining the presence or absence of genetic characteristics in an individual or the individual's blood relatives, including tests of nucleic acids such as DNA, RNA and mitochondrial DNA, chromosomes or proteins in order to diagnose or determine a genetic characteristic. Or. Rev. Stat. Ann. § 192.531(14).

31.    An individual or an individual's blood relative, representative or estate may bring a civil action against any person who violates Or. Rev. Stat. Ann. § 192.539. For a violation of § 192.539, the court shall award the greater of actual damages or:

    a) $1,000, for an inadvertent violation that does not arise out of the negligence of the defendant;

    b) $5,000, for a negligent violation;

    c) $100,000, for a knowing or reckless violation;

    d) $150,000, for a knowing violation based on a fraudulent misrepresentation; or

AMENDED CLASS ACTION COMPLAINT

e) $250,000, for a knowing violation committed with intent to sell, transfer or use for commercial advantage, personal gain or malicious harm.

Or. Rev. Stat. Ann. § 192.541.

## PARTIES

### I.    Plaintiffs

#### A.    Plaintiff Angela Hutcheson

32.    Plaintiff Hutcheson is, and at all times relevant hereto was, a resident of Cook County, Illinois and a Facebook account holder.

33.    Plaintiff Hutcheson created a GEDmatch.com account and uploaded her DNA file on GEDmatch.com in 2018, and her genetic information has remained in the database at all times between when she uploaded it and the present.

34.    Plaintiff Hutcheson has never provided informed, written consent to Verogen to disclose her genetic information or the fact she had undergone genetic testing to Qiagen, Meta, or law enforcement actors.

35.    In fact, at all relevant times, Plaintiff Hutcheson expressly told Verogen not to disclose her genetic information to law enforcement by selecting the "opt out" privacy setting for her file.

36.    Plaintiff Hutcheson has never provided informed, written consent to Qiagen to compel the disclosure of her genetic information or the fact that she has undergone genetic testing.

#### B.    Plaintiff Sara Lafler

37.    Plaintiff Lafler is, and at all times relevant hereto was, a resident of Cook County, Illinois and a Facebook account holder.

38.    Plaintiff Lafler created a GEDmatch.com account and uploaded her DNA file on GEDmatch.com in 2016, and her genetic information has remained

AMENDED CLASS ACTION COMPLAINT

in Verogen's database at all times between when she uploaded it and the present.

39.    Plaintiff Lafler has never provided informed, written consent to Verogen to disclose her genetic information or the fact she had undergone genetic testing to Qiagen or Meta.

40.    Plaintiff Lafler has never provided informed, written consent to Qiagen to compel the disclosure of her genetic information or the fact that she has undergone genetic testing.

### C.    Plaintiff Alucard Taylor

41.    Plaintiff Taylor is, and at all times relevant hereto was, a resident of Multnomah County, Oregon and a Facebook account holder.

42.    Plaintiff Taylor created a GEDmatch.com account and uploaded his DNA file on GEDmatch.com in 2019, and his genetic information has remained in Verogen's database at all times between when he uploaded it and the present.

43.    Plaintiff Taylor has never provided informed, written consent to Verogen to disclose his genetic information or the fact he had undergone genetic testing to Qiagen, Meta, or law enforcement actors.

44.    In fact, at all relevant times, Plaintiff Taylor expressly told Verogen not to disclose his genetic information to law enforcement by selecting the "opt out" privacy setting for his file.

45.    Plaintiff Taylor has never provided informed, written consent to Qiagen to compel the disclosure of his genetic information or the fact that he has undergone genetic testing..

### D.    Plaintiff Kama Delk

46.    Plaintiff Delk is, and at all times relevant hereto was, a resident of Lane County, Oregon and a Facebook account holder.

47.    Plaintiff Delk created a GEDmatch.com account and uploaded her

AMENDED CLASS ACTION COMPLAINT

DNA file on GEDmatch.com in 2018, and her genetic information has remained in Verogen's database at all times between when she uploaded it and the present.

48.    Plaintiff Delk has never provided informed, written consent to Verogen to disclose her genetic information or the fact she had undergone genetic testing to Qiagen or Meta.

49.    Plaintiff Delk has never provided informed, written consent to Qiagen to compel the disclosure of her genetic information or the fact that she has undergone genetic testing.

### E.    Plaintiff Erin Radcliffe

50.    Plaintiff Radcliffe is, and at all times relevant hereto was, a resident of Bernalillo County, New Mexico.

51.    Plaintiff Radcliffe created a GEDmatch.com account and uploaded her DNA file, along with that of her husband and her father-in-law, to GEDmatch.com in 2015, and their genetic information has remained in Verogen's database at all times between when she uploaded the three DNA files and the present.

52.    Plaintiff Radcliffe has never provided informed, written consent to Verogen to disclose her genetic information to Qiagen.

53.    Plaintiff Radcliffe has never provided informed, written consent to Qiagen to obtain, retain, or use her genetic information.

### F.    Plaintiff Mikhaila Diekmann

54.    Plaintiff Diekmann is, and at all times relevant hereto was, a resident of Bernalillo County, New Mexico.

55.    Plaintiff Diekmann created a GEDmatch.com account and uploaded her DNA file to GEDmatch.com in 2019, and her genetic information has remained

AMENDED CLASS ACTION COMPLAINT

in Verogen's database at all times between when she uploaded it and the present.

56.    Plaintiff Diekmann has never provided informed, written consent to Verogen to disclose her genetic information to Qiagen.

57.    Plaintiff Diekmann has never provided informed, written consent to Qiagen to obtain, retain, or use her genetic information.

### G.    Plaintiff Chelsea Gardner

58.    Plaintiff Gardner is, and at all times relevant hereto was, a resident of Merrimack County, New Hampshire and a Facebook account holder.

59.    Plaintiff Gardner created a GEDmatch.com account and uploaded her DNA file on GEDmatch.com in 2019, and her genetic information has remained in Verogen's database at all times between when she uploaded it and the present.

60.    Plaintiff Gardner has never provided informed, written consent to Verogen to disclose her genetic information or the fact she had undergone genetic testing to Qiagen or Meta.

### H.    Plaintiff Andrew Starin

61.    Plaintiff Starin is, and at all times relevant hereto was, a resident of Hillsborough County, New Hampshire and a Facebook account holder.

62.    Plaintiff Starin created a GEDmatch.com account and uploaded his DNA file on GEDmatch.com in 2016 and then again in 2017, and his genetic information has remained in Verogen's database at all times between when he uploaded it and the present.

63.    Plaintiff Starin has never provided informed, written consent to Verogen to disclose his genetic information or the fact he had undergone genetic testing to Qiagen or Meta.

### I.    Plaintiff Sharyl Yeisley

64.    Plaintiff Yeisley is, and at all times relevant hereto was, a resident of

AMENDED CLASS ACTION COMPLAINT

Alaska.

65.    Plaintiff Yeisley created a GEDmatch.com account and uploaded her DNA file on GEDmatch.com in 2019, and her genetic information has remained in Verogen's database at all times between when she uploaded it and the present.

66.    Plaintiff Yeisley has never provided informed, written consent to Verogen to disclose her genetic information to Qiagen.

67.    Plaintiff Yeisley has never provided informed, written consent to Qiagen to retain her genetic information.

### J.    Plaintiff Erica Nathan

68.    Plaintiff Nathan is, and at all relevant times was, a resident of Alaska.

69.    Plaintiff Nathan created a GEDmatch.com account and uploaded her DNA file on GEDmatch.com in approximately 2020, and her genetic information has remained in Verogen's database at all times between when she uploaded it and the present.

70.    Plaintiff Nathan has never provided informed, written consent to Verogen to disclose her genetic information to Qiagen.

71.    Plaintiff Nathan has never provided informed, written consent to Qiagen to retain her genetic information.

## II.    Defendants

### A.    Verogen, Inc.

72.    Defendant Verogen Inc. is a company organized in Delaware with its principal place of business in San Diego, California.

73.    Verogen is a technology company that develops and supplies products for advanced DNA identifications using "next-generation sequencing" technology. It also ran and maintained the GEDmatch.com and GEDmatch PRO databases.

AMENDED CLASS ACTION COMPLAINT

**B.    Qiagen North American Holdings, Inc.**

74.    Defendant Qiagen North American Holdings, Inc. ("Qiagen") is the United States division of Qiagen N.V., a global biotechnology company with its headquarters in the Netherlands. After it purchased Verogen in January 2023, it became the sole owner of Defendant Verogen. It maintains its U.S. headquarters in Germantown, Maryland.

## JURISDICTION AND VENUE

75.    The Court has subject-matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(d)(2)(A) because there are more than 100 members of each of the proposed Classes (defined below), the aggregate amount in controversy with respect to the claim alleged on behalf of each of the proposed Classes exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one member of each of the Classes (including each of the Plaintiffs) is a citizen of a state different from Defendants.

76.    The Court has personal jurisdiction over Defendants and venue is proper in this judicial district because Defendant Verogen maintains its corporate headquarters and principal place of business in San Diego, California, within this judicial district, and because the disclosures of the Plaintiffs' and Classes' genetic information that Defendant Qiagen compelled Verogen to make to Qiagen were made by Verogen from its headquarters in San Diego, California, within this judicial district, such that the claims alleged herein arose, in substantial part, from actions and conduct directed towards, occurring in, and emanating from California and within this judicial district.

## FACTS COMMON TO ALL CLAIMS

**I.    Defendant Verogen's unlawful conduct**

77.    Verogen is an online service company that provides its users the

---

AMENDED CLASS ACTION COMPLAINT

ability to research their family and genetic history through DNA data and advanced, in-depth search tools.

78.    It markets itself as a "place to explore your family history by matching DNA data you can get from a genetic DNA testing kit company like 23andMe or AncestryDNA, and then uncovering techniques used in genetic genealogy to track down relatives and learn about your ancestry."[2]

79.    To use Verogen's services, a person first must create an account on Verogen's GEDmatch.com website. The person then uploads a DNA file (obtained from another provider)—which contains the results of a DNA analysis—on the GEDmatch.com website.[3] A user of Verogen's website can upload his or her own DNA file, or the DNA files of dependents, other people who have given the user specific authorization, deceased people, or persons whose DNA has been extracted from artifacts. For each DNA file uploaded, the person must enter the full name of the person from whom the DNA came, along with that person's gender. Once a DNA file is uploaded, Verogen then provides a variety of tools on its website that allow the user to compare the uploaded DNA file, to the other DNA files in its database.

80.    Before uploading a DNA file, GEDmatch requires a user to select a privacy option for the file, and makes the following guarantees based on the privacy option selected:

1) **Private:** DNA kits will not be available for any matching comparisons with any other people (including law enforcement). No comparison results will be shown unless this privacy setting is changed by you later.

---

[2] GEDmatch, "Make the Most of Your Results | Why Join – GEDmatch," available at https://www.gedmatch.com/why-join/.
[3] GEDmatch refers to each DNA file as a "DNA kit."

AMENDED CLASS ACTION COMPLAINT

2) **Opt-in:** We will compare your DNA kit to all other kits in the GEDmatch database to find your matching genetic relatives. Kits in the database include those submitted by users undertaking personal genetic genealogy research and adoptee searches. Your kit WILL be compared with kits submitted by or on behalf of law enforcement to identify perpetrators of violent crimes or to identify human remains. The operators of GEDmatch encourage everybody to select this option.

3) **Opt-out:** We will compare your DNA kit to all other kits in the GEDmatch database to find your matching genetic relatives. Kits in the database include those submitted by users undertaking personal genetic genealogy research, adoptee searches, and users (including law enforcement) attempting to identify unidentified human remains. Your kit WILL NOT be compared with kits submitted by or on behalf of law enforcement to identify perpetrators of violent crimes.

4) **Research:** DNA kits will not be shown in match result reports generated for other kits (including kits submitted by or on behalf of law enforcement). Genealogy and Genetic Genealogy require the sharing of information. This option is provided primarily for artificially created research kits, but may be used for regular uploads if you have specific reasons for doing so.[4]

81.    If options 2, 3, or 4 are selected for a particular DNA file before it is uploaded, the user can then use Verogen's search tools to find other DNA files that have any genetic similarity to the uploaded DNA file.

82.    A user can also upload a file containing a family tree, created using another website or software program, called a "GEDcom," and can then compare that family tree to those uploaded by other users. A user can link DNA files to their family tree. Someone who has access to a person's GEDcom can see that person's entire family history—e.g. parents, siblings, children, grandparents, grandchildren,

---

[4] GEDmatch, "Is GEDmatch Safe?", available at https://www.gedmatch.com/privacy-security/.

AMENDED CLASS ACTION COMPLAINT

etc.—and the DNA files attached to each person in the user's family tree.

83. GEDmatch.com also includes a related database, GEDmatch PRO Portal, that allows law enforcement to upload evidentiary DNA files from criminal investigations of violent crimes. Verogen charges law enforcement a fee per upload. Law enforcement can then run searches based on its evidentiary sample in the GEDmatch.com database. One of the tools law enforcement can use is the "One-to-Many Kinship" tool.[5] With this tool, the user can run a search that compares the uploaded DNA file with all of the DNA files in Verogen's vast database, and a search performed using this tool yields a list of users who "share some genetic similarities" with the user.[6] In other words, the individuals' DNA files that come up in this type of search are not necessarily close matches to the DNA file law enforcement is using. They simply need to "share some genetic similarity" with the primary DNA file.[7] Consequently, the use of this tool allows law enforcement to compare uploaded DNA files against all user-uploaded DNA files in Verogen's database and gives law enforcement a list of hundreds if not thousands of individuals' DNA files that share any genetic similarity to DNA related to a crime.

84. Verogen promises its users that they will not disclose to law enforcement any DNA files except for those that the uploading users specifically authorized to be used in law enforcement search queries. Specifically, according to Verogen, law enforcement are only permitted to access DNA files that were "opt-ed in" for law enforcement queries by the users who uploaded them (i.e., DNA files for which the uploading user selected option 2 above).

---

[5] GEDmatch, "GED Match One-to-Many Comparison," available at https://www.gedmatch.com/applications/one-to-many/.
[6] *Id.*
[7] A user can adjust the search parameters to narrow or widen the search results.

AMENDED CLASS ACTION COMPLAINT

85.     To date, GEDmatch.com has amassed over 2 million DNA files from its users. It has done so, in part, by making assurances to its users that their genetic information would remain private, and that it would only be disclosed to the specific third parties that the users expressly agreed may receive such information at the time of upload.

86.     Those were false promises.  As alleged below, during the time period relevant to this action, Verogen repeatedly disclosed to multiple third parties the genetic information uploaded by Plaintiffs and its other users, without any of their written informed consent, in three primary ways.

### A.     Disclosure to Qiagen, a foreign corporation

87.     First, Verogen violated the State Genetics Statutes by disclosing its entire database to Qiagen in connection with Qiagen's acquisition of Verogen in 2023.

88.     To monetize the genetic information in its vast GEDmatch database, in January 2023, Verogen sold its GEDmatch.com and GEDmatch PRO databases, along with the rest of the company, to Qiagen for $150 million.[8]

89.     As part of the sale, Verogen gave Qiagen "full access to Verogen's pioneering GEDmatch database and GEDmatch PRO portal."[9] Thus, Verogen knowingly and purposefully disclosed to Qiagen the genetic information of every individual with a DNA file in its database at that time—including the genetic information of all of the Plaintiffs and members of the Classes.

90.     Additionally, the information Verogen sold to Qiagen included the

---

[8] Press Release, Qiagen, "Qiagen completes acquisition of Verogen, strengthening leadership in Human ID/Forensics with NGS technologies" (Jan. 9, 2023), available at https://corporate.qiagen.com/English/newsroom/press-releases/press-release-details/2023/QIAGEN-Completes-Acquisition-of-Verogen-Strengthening-Leadership-in-Human-ID--Forensics-With-NGS-Technologies/default.aspx.
[9] Id.

AMENDED CLASS ACTION COMPLAINT

fact that each individual with a DNA file in its database had undergone genetic testing, as well as all of the accompanying information gathered by Verogen that was connected to each of these DNA files (including, inter alia, the first and last names and email addresses of the users who had uploaded the files, and the full name and gender of the person to whom the DNA file belonged). That information can be used to identify Plaintiffs and the other members of the Classes as the subjects of each DNA file uploaded to GEDmatch.com and as persons who had undergone genetic testing.

91.     Verogen also sold to Qiagen the family trees, or GEDcoms, that its users had uploaded. This allowed Qiagen to access the genetic information of users' identified family members and the fact that these specific family members had undergone genetic testing. It also allowed Qiagen to access that user's entire family tree as well as any genetic information connected to those family members.

92.     Verogen failed to obtain informed, written consent of any of the millions of individuals (including Plaintiffs and the members of the Classes) with genetic information in its database prior to disclosing it all to Qiagen.

93.      Verogen disclosed the genetic information of all the individuals in its database (including of Plaintiffs and the members of the Classes) for profit and commercial gain. Indeed, profit and commercial gain was the very purpose of the sale to Qiagen. The approximately 1.8 million DNA files in Verogen's GEDmatch database at the time undoubtedly added to Verogen's value in the acquisition. After the sale, Qiagen boasted of the specific purchase of the database in a press release, stating "Qiagen also gains full access to Verogen's pioneering GEDmatch database and GEDmatch PRO portal."[10] Verogen certainly benefitted financially

---

[10] *Id.*

AMENDED CLASS ACTION COMPLAINT

from the disclosure of the genetic information in its database to Qiagen.

94.    Verogen's disclosures of this incredibly sensitive information to Qiagen were highly offensive to Plaintiffs and would be viewed as such by the average person.

95.    Verogen thus violated the genetic privacy laws of Alaska, Illinois, New Hampshire, New Mexico, and Oregon by disclosing, releasing, or transmitting to Qiagen Plaintiffs' and the Classes' genetic information without their written and informed consent.

**B.    Disclosure to Meta**

96.    Second, Verogen also violated the State Genetics Statutes by systematically disclosing the identities of its users and the fact they had undergone genetic testing to Meta, without its users' written informed consent, through its use of the Meta Pixel technology it had installed on its GEDmatch.com website.

### i. The Meta Pixel

97.    On February 4, 2004, Mark Zuckerberg and others launched Facebook, now known as "Meta".[11] Since then, Meta has become the world's largest social media platform. To create a Meta account, a person must provide, *inter alia*, his or her first and last name, birthdate, gender, and phone number or email.

98.    The Meta Pixel, first introduced in 2013 as the "Facebook Pixel," is a unique string of code that companies can embed on their websites to allow them to track consumers' actions and report the actions back to Meta.

99.    The Meta Pixel allows online-based companies like Verogen to build detailed profiles about their visitors by collecting information about how they interact with their websites, and to then use the collected information to service

---

[11] Facebook, "Company Info," available at https://about.fb.com/company-info./.

AMENDED CLASS ACTION COMPLAINT

1  highly targeted advertising to them.

2      100.   Additionally, a Meta Pixel installed on a company's website allows

3  Meta "to match . . . website visitors to their respective [Meta] User accounts."[12]

4  Meta is able to do this because it has assigned each of its users an "FID" number:

5  a unique and persistent identifier that allows anyone to look up the user's unique

6  Meta profile and thus identify the user by name.[13] Then, each transmission of

7  information made from a company's website to Meta via the Meta Pixel is

8  accompanied by the FID of the website's visitor. Moreover, the Meta Pixel can

9  follow a consumer to different websites and across the Internet even after clearing

10  browser history.

11      101.   Meta has used the Meta Pixel to amass a vast digital database of

12  dossiers comprised of highly detailed personally identifying information about

13  each of its billions of users worldwide, including information about all its users'

14  interactions with any of the millions of websites across the Internet on which the

15  Meta Pixel is installed. Meta then monetizes this Orwellian database by selling

16  advertisers the ability to serve highly targeted advertisements to the persons whose

17  personal information is contained within it.

18      102.   Simply put: if a company chooses to install the Meta Pixel on its

19  website, both the company who installed it and Meta (the recipient of the

20  information it transmits) are then able to "track[] the people and type of actions

21  they take"[14] on the company's website, including whether they uploaded their

22  genetic information and their use of the genealogical tools on GEDmatch.com.

23  _____

24  [12] Meta, "Get Started – Meta Pixel," available at https://developers.facebook.com/docs/meta-pixel/get-started/.

25  [13] For example, Mark Zuckerberg's FID is reportedly the number "4," so logging into Facebook and typing www.facebook.com/4 in the web browser retrieves Mark Zuckerberg's Facebook page: www.facebook.com/zuck, and all of the additional personally identifiable information contained therein.

26  [14] Meta, "Retargeting: How to Advertise to Existing Customers with Ads on Facebook," available at https://www.facebook.com/business/goals/retargeting?checkpoint_src=any.

27

AMENDED CLASS ACTION COMPLAINT

### ii. Verogen Knowingly Used the Meta Pixel to Transmit to Meta its Users' Identities and the Fact They had Undergone Genetic Testing

103.    Upon information and belief, from at least as early as January 2020 through at least as recently as June 2023, when a person created an account, uploaded a DNA file, and used any of the tools on the GEDmatch.com website, Verogen used the Meta Pixel technology it had installed on the website to disclose to Meta the unencrypted FID of the user along with the activities of the user on GEDmatch.com. This included information that the user had uploaded her DNA file to GEDmatch.com. In other words, GEDmatch.com disclosed to Meta the identity of the user—identified by her unique FID—and the fact that she had undergone genetic testing.

104.    With only a person's FID and the website activity, which Verogen knowingly provided to Meta, any ordinary person could learn the identity of the person to whom the FID corresponds and that they had undergone genetic testing.

105.    At all relevant times, Verogen knew that the Meta Pixel disclosed to Meta its users FID and that they had uploaded DNA files to GEDmatch.com.

106.    Upon information and belief, Facebook also received Plaintiffs' information directly through its Conversion API, which established a server-to-server data transmission from GEDmatch's Website server.

107.    Verogen intentionally programmed its website (by following step-by-step instructions from Meta's website) to include the Meta Pixel that systematically transmits to Meta the FIDs of its users, along with their activity on the website. Verogen did so to take advantage of the targeted advertising and other informational and analytical services offered by Meta. This targeted advertising and other Meta services increased Verogen's revenue. Therefore, installing the Meta Pixel to transmit users' information was done for profit, monetary gain and

AMENDED CLASS ACTION COMPLAINT

commercial advantage.

108.   Verogen could easily have programmed its website without the Meta Pixel. Instead, Verogen chose to install the Meta Pixel on its website and disclosed to Meta that every person with a DNA file uploaded had undergone genetic testing.

109.   Prior to transmitting its users' identities and that they had undergone genetic testing to Meta, Verogen failed to notify Plaintiffs or any Class members that it would do so, and neither Plaintiffs nor any other Class members consented (in writing or otherwise) to these practices.

110.   Verogen's disclosures of this incredibly sensitive information to Meta were highly offensive to Plaintiffs and would be viewed as such by the average person.

111.   By intentionally disclosing to Meta the identities of Plaintiffs Hutcheson, Lafler, Taylor, Delk, Gardner, and Starin and other Class members who were enrolled in Facebook, along with the fact they had undergone genetic testing, Verogen knowingly and systematically violated the genetic privacy statutes of Illinois, New Hampshire, and Oregon listed above.

## C.    Disclosure to Law Enforcement

112.   Verogen further violated the State Genetics Statutes when it allowed law enforcement to access DNA files against the express wishes of its users.

113.   As stated above, through GEDmatch PRO Portal, law enforcement can upload evidentiary DNA files and compare them to files in the GEDmatch.com database marked as "opt in" as part of an investigation of a violent crime. One of the tools law enforcement can use is the "One-to-Many Kinship" tool.[15] With this tool, law enforcement can run a search that results in a list of DNA files of

---

[15] GEDmatch, "GED Match One-to-Many Comparison," available at https://www.gedmatch.com/applications/one-to-many/.

individuals who "share some genetic similarities" with the law enforcement sample.[16] The bar to be included in a law enforcement "one-to-many" search is low: the individuals' DNA files that come up in this type of search need not be close matches to the DNA file law enforcement is using. They simply need to "share some genetic similarity" with the law enforcement DNA sample.[17] Therefore, upon information and belief, the search can result in a list of hundreds or thousands of individuals' DNA files that law enforcement can then access. Further, from that list, law enforcement can evaluate possible relations and use the files to build and merge family trees and identify the most recent common ancestor.[18] In sum, GEDmatch.com's search tools give law enforcement access to thousands, if not hundreds of thousands, of individuals' DNA files without a warrant, and without those individuals ever being involved in or suspected of any crime.

114. Because of the serious privacy concern this entails, Verogen guaranteed its users that law enforcement would not have access to their DNA files unless the user selected the "opt-in" privacy level for the DNA file.

115. However, from approximately 2019 (perhaps earlier) through at least July 2023, GEDmatch had a "loophole" that allowed law enforcement or other users acting on behalf of law enforcement, to view DNA files not marked as "opt in".[19] In so doing, Verogen disclosed the DNA files of an unknown number of

---

[16] *Id.*
[17] A user can adjust the search parameters to narrow or widen the search results.
[18] Verogen, "SNP Typing in Universal Analysis Software and Kinship Estimation with GEDmatch PRO" (March 2021), available at https://verogen.com/wp-content/uploads/2021/03/snp-typing-uas-kinship-estimation-gedmatch-pro-tech-note-vd2020058-a.pdf.
[19] Verogen, "Notice regarding investigations into FIGG practitioners circumventing GEDmatch settings and violating Terms of Service, and actions taken" (November 2023), available at https://verogen.com/notice-regarding-investigations-into-figg-practitioners-circumventing-gedmatch-settings-and-violating-terms-of-service-and-actions-taken/#:~:text=We%20recently%20learned%20that%20a,for%20violent%20crime%20and%20homicides.

individuals to law enforcement not only without their consent, but against their specific wishes. The information disclosed to law enforcement included the DNA files, names, email address, DNA kit number, and the degree to which the file was related to the law enforcement evidentiary sample.[20]

116.    This was not the first time Verogen allowed law enforcement to access individuals' DNA files and other genetic information in its database against its express promises to its users. Prior to May 31, 2019, Verogen only allowed law enforcement to access the DNA files on GEDmatch.com for investigations of homicide or sexual assault. However, in November 2018, Verogen, without informing its users and without their consent, violated those promises and disclosed the genetic information of its users to law enforcement in Utah for an investigation of a regular assault.[21] Approximately two weeks after the press broke the story, Verogen changed its terms and conditions to allow law enforcement to access its users' DNA files for crimes beyond homicide and sexual assault.[22]

117.    The Fourth Amendment to the United States' Constitution protects individuals from law enforcement viewing their genetic information at its whim. For law enforcement to obtain access to an individual's DNA file without the individual's express consent, they must first have probable cause that the person committed a crime. Then, the officer must obtain a warrant signed by a judge, who agrees that probable cause exists, before they can obtain and view a person's DNA file.

---

[20] *Id.*

[21] Buzzfeed, "The Arrest of a Teen On An Assault Charge Has Sparked New Privacy Fears About DNA Sleuthing", May 15, 2019, available at https://www.buzzfeednews.com/article/peteraldhous/genetic-genealogy-parabon-gedmatch-assault (Owner Curtis Rogers admitting he allowed law enforcement to use database in violation of GEDmatch's express policies.).

[22] Compare "Terms of Service and Privacy Policy" revised May 18, 2019 (available at https://web.archive.org/web/20190627225855/https://www.gedmatch.com/tos.htm) with "Terms of Service and Privacy Policy" on May 13, 2019 (available at https://web.archive.org/web/20190507124050/https://www.gedmatch.com/tos.htm).

AMENDED CLASS ACTION COMPLAINT

118. Here, Verogen allowed law enforcement to circumvent those constitutional protections by giving them access to numerous individuals' DNA information without a warrant and against the individuals' express wishes.

119. Verogen illegally disclosed these individuals' genetic information for profit, monetary gain, and commercial advantage. Verogen markets the use of its GEDmatch.com database for investigatory comparisons to police departments, charging them approximately $700 per upload.[23] The more DNA files law enforcement can access in their searches, the more valuable Verogen's service. Therefore, allowing law enforcement access to *all* the DNA files, including those that were not marked as "opt in," increased Verogen's value to law enforcement and increased its revenue. Alternatively, Verogen's disclosure was negligent.

120. Verogen's disclosures of this incredibly sensitive information to law enforcement entities were highly offensive to Plaintiffs and would be viewed as such by the average person.

121. Verogen's disclosures to Qiagen and law enforcement violated the genetic privacy laws of Alaska, Illinois, New Hampshire, New Mexico, and Oregon. Verogen's disclosures to Meta violated the genetic privacy laws of Illinois, New Hampshire, and Oregon.

## II. Defendant Qiagen's unlawful conduct

122. Qiagen violated the genetic privacy statutes of Alaska, Illinois, New Mexico, and Oregon by obtaining, retaining, using, and compelling the disclosure of the genetic information of the nearly 2 million individuals with DNA files in the GEDmatch database without the individuals' written, informed consent.

123. Qiagen violated the genetic privacy statutes of Illinois and Oregon by compelling Verogen to disclose all the genetic information contained in the

---

[23] Based on pricing information from 2022.

AMENDED CLASS ACTION COMPLAINT

GEDmatch database as part of the sale of Verogen, Inc. Unsurprisingly, Qiagen did not purchase the GEDmatch database solely for Verogen's benefit. The value of a database containing genetic information of nearly 2 million individuals, including their genealogical connections, is obvious. The vast database allows Qiagen to offer enhanced services to law enforcement agencies and forensic teams, increasing its revenue and profit. Further, the tools available on GEDmatch.com that allow law enforcement to search for familial links in turn allow Qiagen to charge premium prices for access to its database, leading to higher profits. Qiagen clearly recognized the value of the database as it specifically boasted of the acquisition of and access to the database in its press release about its purchase of Verogen, stating that Qiagen gained "full access to Verogen's pioneering GEDmatch database and GEDmatch PRO portal".[24]

124.    Since the acquisition, Qiagen has indeed leveraged this valuable resource for profit. It recently announced a new multi-year partnership with Bode Technology, the largest private U.S. forensics lab, where Bode will be the "exclusive global commercial partner for the GEDmatch PRO genealogy database."[25] Qiagen also announced a collaboration with Othram, a private DNA laboratory helping law enforcement solve various cases, in which the two companies will share access to the GEDmatch PRO tools.[26]

125.    Given the enormous value of the database at the time of the sale, as well as its future value, Qiagen required Verogen to include the database, and importantly, access to the database, as part of the sale of Verogen to Qiagen. In

---

[24] *Supra*, at 8.
[25] "QIAGEN and Bode Technology Partner to Advance Use of GEDmatch PRO Forensic Genetic Genealogy Database", https://www.globenewswire.com/news-release/2024/09/23/2951753/0/en/QIAGEN-and-Bode-Technology-partner-to-advance-use-of-GEDmatch-PRO-forensic-genetic-genealogy-database.html.
[26] "Othram, QIAGEN Collaborate on Tools, Standards for DNA", https://www.forensicmag.com/3594-All-News/615381-Othram-QIAGEN-Collaborate-on-Tools-Standards-for-DNA/

AMENDED CLASS ACTION COMPLAINT

doing so, Qiagen compelled Verogen to disclose the genetic information of all individuals in its database. It did so without the written, informed consent of any of those individuals. Qiagen's conduct in compelling the disclosure of the genetic information of millions of people violated the genetic privacy laws of Illinois and Oregon.

126. Further, in purchasing the GEDmatch and GEDmatch PRO databases from Verogen, Qiagen obtained the genetic information of nearly 2 million individuals without their written, informed consent. This conduct violates New Mexico's genetic privacy statute.

127. Qiagen further violated the genetic privacy statute of New Mexico by using the genetic information contained in the GEDmatch databases without the written, informed consent of the individuals to whom the genetic information belonged. In addition to the general use of the genetic information that access to the database allows, Qiagen used its ownership of the genetic information to procure financially beneficial partnerships, as described above.

128. Finally, Qiagen violated the genetic privacy statutes of Alaska and New Mexico by retaining the genetic information of nearly 2 million individuals after it purchased the databases from Verogen. It did so without the individuals' written, informed consent.

129. Qiagen obtaining, retaining, using, and compelling the disclosure of this genetic information was highly offensive to Plaintiffs and would be viewed as such by the average person.

## CLASS ACTION ALLEGATIONS

130. Plaintiffs Hutcheson and Lafler seek to represent a class defined as all Illinois residents who had their DNA files uploaded on Verogen's GEDmatch.com website and subsequently had the genetic information pertaining

AMENDED CLASS ACTION COMPLAINT

to such DNA file disclosed without their written, informed consent, during the applicable limitation period (the "Illinois Class").

131.    Plaintiffs Hutcheson and Lafler also seek to represent a subclass defined as all Illinois residents who, while maintaining a Facebook account, uploaded a DNA profile on Verogen's GEDmatch.com website and subsequently had the genetic information pertaining to such DNA profile disclosed to Meta during the applicable limitation period ("the Illinois Meta Subclass").

132.    Plaintiff Hutcheson also seeks to represent a subclass of all Illinois residents who had their DNA file uploaded on Verogen's GEDmatch.com website, did not opt-in to permit law enforcement to access such DNA file, and who subsequently had their genetic information pertaining to such DNA file disclosed to law enforcement or others acting on their behalf during the applicable limitation period (the "Illinois Non-Consent to Law Enforcement Subclass").

133.    Plaintiffs Delk and Taylor seek to represent a class defined as all Oregon residents who had their DNA file uploaded on Verogen's GEDmatch.com website and subsequently had the genetic information pertaining to such DNA file disclosed without their written, informed consent, during the applicable limitation period (the "Oregon Class").

134.    Plaintiffs Delk and Taylor also seek to represent a subclass defined as all Oregon residents who, while maintaining a Facebook account, uploaded a DNA profile on Verogen's GEDmatch.com website and subsequently had the genetic information pertaining to such DNA profile disclosed to Meta during the applicable limitation period (the "Oregon Meta Subclass").

135.    Plaintiff Taylor also seeks to represent a subclass of all Oregon residents who had their DNA file uploaded on Verogen's GEDmatch.com website, did not opt-in to permit law enforcement to access such DNA file, and who

AMENDED CLASS ACTION COMPLAINT

subsequently had their genetic information pertaining to such DNA file disclosed to law enforcement or others acting on their behalf during the applicable limitation period (the "Oregon Non-Consent to Law Enforcement Subclass").

136.    Plaintiffs Diekmann and Radcliffe seek to represent a class defined as all New Mexico residents who had their DNA file uploaded on Verogen's GEDmatch.com website and subsequently had the genetic information pertaining to such DNA file disclosed, obtained, retained, or used without their written, informed consent during the applicable limitation period (the "New Mexico Class").

137.    Plaintiffs Gardner and Starin seek to represent a class defined as all New Hampshire residents who had their DNA file uploaded on Verogen's GEDmatch.com website and subsequently had the genetic information pertaining to such DNA file disclosed without their written, informed consent, during the applicable limitation period (the "New Hampshire Class").

138.    Plaintiffs Gardner and Starin also seek to represent a subclass defined as all New Hampshire residents who, while maintaining a Facebook account, uploaded a DNA profile on Verogen's GEDmatch.com website and subsequently had the genetic information pertaining to such DNA profile disclosed to Meta during the applicable limitation period (the "New Hampshire Meta Subclass").

139.    Plaintiffs Yeisley and Nathan seek to represent a class defined as all Alaska residents who had their DNA file uploaded on Verogen's GEDmatch.com website and subsequently had the genetic information pertaining to such DNA file disclosed or retained, without their written, informed consent, during the applicable limitation period (the "Alaska Class").

140.    Plaintiffs reserve the right to modify the class definition or add subclasses as necessary prior to filing a motion for class certification.

AMENDED CLASS ACTION COMPLAINT

141.   The above-defined classes are referred to collectively at times herein as the "Classes."

142.   Members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Classes number in at least the hundreds of thousands. The precise number of members of the Classes and their identities are unknown to Plaintiff at this time but may be determined through discovery. Members of the Classes may be notified of the pendency of this action by mail and/or publication through the membership records of Defendants.

143.   Common questions of law and fact exist for all members of the Classes and predominate over questions affecting only individual class members. Common legal and factual questions include, but are not limited to:

(a)   Whether Verogen disclosed Plaintiffs' and the members of the Classes' genetic information to Qiagen;

(b)   Whether Verogen disclosed Plaintiffs' and the members of Classes' identities and that they had undergone genetic testing to Meta;

(c)   Whether Verogen disclosed Plaintiffs' and members of the Classes' genetic information to law enforcement actors;

(d)   Whether Qiagen compelled the disclosure of Plaintiffs' and members of the Classes' genetic information;

(e)   Whether Qiagen obtained, retained, or used Plaintiffs' and members of the Classes' genetic information;

(f)   Whether the conduct described constitutes a violation of A.S. § 18.13.010, *et seq.*;

(g)   Whether the conduct described constitutes a violation of 410 ILCS 513/1, *et seq.*;

AMENDED CLASS ACTION COMPLAINT

(h) Whether the conduct described constitutes a violation of N.H. Rev. Stat. § 141-H:1, *et seq.*;

(i) Whether the conduct described constitutes a violation of N.M.S.A. 1978, § 24-21-1, *et seq.*;

(j) Whether the conduct described constitutes a violation of O.R.S. § 192.531, *et seq.*;

(k) Whether the disclosures were willful, negligent, intentional, or reckless;

(l) Whether the disclosures were committed with the intent to sell, transfer or use for commercial advantage, or resulted in profit or monetary gain; and

(m) Whether Plaintiffs and the Classes are entitled to damages and injunctive relief.

144.   The named Plaintiffs' claims are typical of the claims of the members of the Classes in that the named Plaintiffs and the members of the Classes suffered invasions of their statutorily protected rights to genetic privacy as a result of Defendants' actions in disclosing, compelling the disclosure of, obtaining, retaining, or using their genetic information without proper consent.

145.   Plaintiffs are adequate representatives of the Classes because their interests do not conflict with the interests of the members of the Classes they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously.  Plaintiffs and counsel will fairly and adequately protect the interests of members of the Classes.

146.   The class mechanism is superior to other available means for the fair and efficient adjudication of Classes members' claims.  Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish

Defendants' liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by this case's complex legal and factual issues.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Against Defendant Verogen**
**Violation of A.S. § 18.13.010, *et seq.***
**(By Plaintiffs Yeisley and Nathan, Individually and on Behalf**
**of the Alaska Class)**

147.   Plaintiffs Yeisley and Nathan incorporate by reference and re-allege all paragraphs above.

148.   Plaintiffs Yeisley and Nathan are domiciled and suffered injury in Alaska.

149.   Plaintiffs Yeisley and Nathan bring their claims individually and on behalf of the members of the Alaska Class.

150.   A.S. § 18.13.010, *et seq.*, prohibits a person or corporation from disclosing the results of a DNA analysis without informed and written consent.

151.   Plaintiffs Yeisley and Nathan and the Alaska Class members uploaded or had another upload their DNA analysis results to GEDmatch.com. They also provided accompanying personal identifying information, including at least their names.

AMENDED CLASS ACTION COMPLAINT

152.   The information Verogen obtained from Plaintiffs Yeisley and Nathan and the Class members is the type of information protected by A.S. § 18.13.010, *et seq*.

153.   Verogen disclosed Plaintiffs' and the Alaska Class members' DNA analysis results to Qiagen without their written informed consent. In doing so, Verogen violated A.S. § 18.13.010, *et seq.*

154.   Verogen's violation resulted in profit or monetary gain. Verogen made $150 million in its sale to Qiagen, which was in part due to the value of the genetic information in the GEDmatch.com database.

155.   Based upon Verogen's violation of A.S. § 18.13.010, *et seq.*, Plaintiffs Yeisley and Nathan and members of the Alaska Class are entitled to (1) an injunction requiring Verogen to cease disclosing Plaintiffs' Yeisley and Nathan and the Alaska Class members' genetic information without written, informed consent, and withdraw the genetic information disclosed to law enforcement and Qiagen, (2) statutory damages in the amount of $100,000 per violation to Plaintiffs Yeisley and Nathan and the Alaska Class members for the violations that resulted in profit or monetary gain, or statutory damages in the amount of $5,000 per violation if the Court finds the violations were not for profit or monetary gain, (3) an award of punitive damages or exemplary damages, and (4) an award of reasonable attorneys' fees, court costs, and reasonable expenses.

**SECOND CAUSE OF ACTION**
**Against Defendant Qiagen**
**Violation of A.S. § 18.13.010, *et seq.***
**(By Plaintiffs Yeisley and Nathan, Individually and on Behalf of the Alaska Class)**

156.   Plaintiffs Yeisley and Nathan incorporate by reference and re-allege all paragraphs above.

AMENDED CLASS ACTION COMPLAINT

157.    Plaintiffs Yeisley and Nathan are domiciled and suffered injury in Alaska.

158.    Plaintiffs Yeisley and Nathan bring their claims individually and on behalf of the members of the Alaska Class.

159.    A.S. § 18.13.010(a)(1) prohibits a person or corporation from retaining the results of a DNA analysis without informed and written consent.

160.    Plaintiffs and the Alaska Class members uploaded or had another upload their DNA analysis results to GEDmatch.com. They also provided accompanying personal identifying information, including at least their names.

161.    The information Plaintiffs Yeisley and Nathan uploaded to GEDmatch.com is the type of information protected by A.S. § 18.13.010, *et seq*.

162.    Qiagen obtained Plaintiffs Yeisley's and Nathan's and the Alaska Class members' DNA analysis results through its purchase of Verogen and its GEDmatch database. It then retained Plaintiffs Yeisley's and Nathan's and the Alaska Class members' DNA analysis results without their written, informed consent. In doing so, Qiagen violated A.S. § 18.13.010, *et seq.*

163.    Qiagen's violation resulted in profit or monetary gain. Qiagen's retention of the DNA analysis results in the GEDmatch.com database undoubtedly added to Qiagen's value. By maintaining control over this extensive genetic database, Qiagen can and has leveraged this valuable resource to offer premium services to law enforcement agencies and forensic investigators, as shown in its new multi-year partnerships with Bode Technology and Othram lab. The value of the extensive database is the reason Qiagen boasted specifically of its access to this genetic information in the press release announcing its acquisition of Verogen.[27]

---

[27] *Supra*, at 8.

AMENDED CLASS ACTION COMPLAINT

164.    Based upon Qiagen's violation of A.S. § 18.13.010, *et seq.*, Plaintiffs Yeisley and Nathan and members of the Alaska Class are entitled to (1) an injunction requiring Qiagen to cease retention of Plaintiffs' and the Alaska Class members' genetic information without written, informed consent, (2) statutory damages in the amount of $100,000 per violation to Plaintiffs and the Alaska Class members for the violations that resulted in profit or monetary gain, or statutory damages in the amount of $5,000 per violation if the Court finds the violations were not for profit or monetary gain, (3) an award of punitive damages or exemplary damages, and (4) an award of reasonable attorneys' fees, court costs, and reasonable expenses.

### THIRD CAUSE OF ACTION
### Against Defendant Verogen
### Violation of 410 ILCS 513/1, *et seq*.
### (By Plaintiffs Hutcheson and Lafler, Individually and on Behalf of the Illinois Class and Meta Subclass, and by Hutcheson, Individually and on Behalf of the Illinois Non-Consent to Law Enforcement Subclass)

165.    Plaintiffs Hutcheson and Lafler incorporate by reference and re-allege all paragraphs above.

166.    Plaintiffs Hutcheson and Lafler are domiciled and suffered injury in Illinois.

167.    Plaintiffs Hutcheson and Lafler brings their claims individually and on behalf of the members of the Illinois Class. Plaintiff Hutcheson also brings her claims on behalf of the members of the Illinois Subclass.

168.    Verogen is a corporation and is thus a "person" under 410 ILCS 513/15.

169.    Illinois's GIPA, 410 ILCS 513/1, *et seq.*, prohibits disclosing a person's genetic information or the identity of any person upon whom a genetic test is performed without informed, written consent. The consent must be given in

a specific written legally effective authorization and designate the person to whom the information will be released.

170. "Genetic information" includes the individual's genetic tests as well as the genetic tests of family members of the individual. 410 ILCS 513/10, citing 45 C.F.R. § 160.103.

171. Plaintiffs Hutcheson and Lafler and the Illinois Class members uploaded or had another upload their genetic information in the form of DNA data to GEDmatch.com. They also provided accompanying personal identifying information, including at least their names. Plaintiff Hutcheson and the Illinois Non-Consent to Law Enforcement Subclass members did not opt in or consent to law enforcement having access to their genetic information.

172. The information Verogen obtained from Plaintiffs and the Class members is the type of information protected by 410 ILCS 513/1, *et seq.*

173. As described above, Verogen disclosed Plaintiffs' and the putative Illinois Class members' genetic information, along with their identities and the fact they had undergone genetic testing to Qiagen without their written, informed consent. Verogen further disclosed Plaintiffs' and the Illinois Meta Subclass members' genetic information, along with their identities and the fact they had undergone genetic testing, to Meta without their written, informed consent. Verogen also disclosed Plaintiff Hutcheson's and the Illinois Non-Consent to Law Enforcement Subclass members' genetic information, along with their identities and the fact they had undergone genetic testing to law enforcement actors without their written, informed consent and against their express wishes. All such disclosures violated 410 ILCS 513/1, *et seq*.

174. Plaintiffs Hutcheson and Lafler and the Illinois Class members are aggrieved by Verogen's violations.

AMENDED CLASS ACTION COMPLAINT

175.    Verogen disclosed the genetic information of the Plaintiffs and the Illinois Class and Subclass members intentionally or recklessly, but at very least, negligently. Verogen knowingly sold its entire database of genetic information to Qiagen for financial gain, using the genetic information in the database to increase the sale price. That conduct constitutes an intentional and reckless disclosure of its users' genetic information without written, informed consent. Verogen also intentionally disclosed its users' identities and the fact that they had genetic testing performed to Meta to improve its advertising, and thus, increase its profits. Finally, Verogen intentionally or recklessly violated GIPA by establishing, maintaining, and failing to fix the loophole that allowed law enforcement to view the genetic information of the individuals who had expressly "opted out" of law enforcement access.

176.    Based upon Verogen's violations, Plaintiffs and the Illinois Class and Subclass members are entitled to statutory damages of $15,000 for each willful and/or reckless violation of GIPA or actual damages—whichever is greater—and, alternatively, damages of $2,500 for each negligent violation of GIPA or actual damages—whichever is greater—along with reasonable attorney's fees and costs. 410 ILCS 513/40(a)(3).

**FOURTH CAUSE OF ACTION**
**Against Defendant Qiagen**
**Violation of 410 ILCS 513/1, *et seq*.**
**(By Plaintiffs Hutcheson and Lafler, Individually and on Behalf of the Illinois Class)**

177.    Plaintiffs Hutcheson and Lafler incorporate by reference and re-allege all paragraphs above.

178.    Plaintiffs Hutcheson and Lafler are domiciled and suffered injury in Illinois.

179.    Plaintiffs Hutcheson and Lafler brings their claims individually and on behalf of the members of the Illinois Class.

180.    Qiagen is a corporation and is thus a "person" under 410 ILCS 513/15.

181.    Illinois's GIPA, 410 ILCS 513/1, *et seq.*, prohibits compelling disclosure of a person's genetic information or the identity of any person upon whom a genetic test is performed without informed, written consent. The consent must be given in a specific written legally effective authorization and designate the person to whom the information will be released.

182.    "Genetic information" includes the individual's genetic tests as well as the genetic tests of family members of the individual. 410 ILCS 513/10, citing 45 C.F.R. § 160.103.

183.    Plaintiffs Hutcheson and Lafler and the Illinois Class members uploaded or had another upload their genetic information in the form of DNA data to GEDmatch.com. They also provided accompanying personal identifying information, including at least their names.

184.    The information Plaintiffs and the Class members uploaded onto GEDmatch.com is the type of information protected by 410 ILCS 513/1, *et seq.*

185.    As described above, Qiagen compelled Verogen to disclose Plaintiffs' and the Illinois Class members' genetic information, along with their identities and the fact they had undergone genetic testing without their written, informed consent, by requiring Verogen to include the database and access to the database as part of the sale. Qiagen compelling Verogen to disclose the genetic information in its GEDmatch.com database violated 410 ILCS 513/1, *et seq.*

186.    Plaintiffs Hutcheson and Lafler and the Illinois Class members are aggrieved by Qiagen's violations.

AMENDED CLASS ACTION COMPLAINT

187.    Qiagen compelled disclosure of the genetic information of the Plaintiffs and the Illinois Class members intentionally or recklessly, but at very least, negligently. Qiagen knowingly required Verogen to include the GEDmatch database, and importantly, access to the database, in the sale of Verogen. Qiagen then used its access to the database for financial again, using the value of the vast amount of genetic information it contains to increase its own market value and increase revenue. That conduct is intentional and reckless.

188.    Based upon Qiagen's violations, Plaintiffs and the Illinois Class members are entitled to statutory damages of $15,000 for each willful and/or reckless violation of GIPA or actual damages—whichever is greater—and, alternatively, damages of $2,500 for each negligent violation of GIPA or actual damages—whichever is greater—along with reasonable attorney's fees and costs. 410 ILCS 513/40(a)(3).

**FIFTH CAUSE OF ACTION**
**Against Defendant Verogen**
**Violation of N.H. Rev. Stat. § 141-H:1, *et seq.*;**
**(By Plaintiffs Gardner and Starin, Individually and on Behalf of the New Hampshire Class and Meta Subclass)**

189.    Plaintiffs Gardner and Starin incorporate by reference and re-allege all paragraphs above.

190.    Plaintiffs Gardner and Starin are domiciled and suffered injury in New Hampshire.

191.    Plaintiffs Gardner and Starin bring their claims individually and on behalf of the members of the New Hampshire Class.

192.    N.H. Rev. Stat. Ann. § 141-H:2 IV prohibits disclosing to any other person that "an individual has undergone genetic testing," or the results of any genetic testing without prior written and informed consent.

AMENDED CLASS ACTION COMPLAINT

193.   Plaintiffs Gardner and Starin and the New Hampshire Class members uploaded or had another upload their genetic information to GEDmatch.com. They also provided accompanying personal identifying information, including at least their names and email addresses.

194.   The information Plaintiffs Gardner and Starin and the Class members uploaded to GEDmatch.com is the type of information protected by N.H. Rev. Stat. § 141-H:1, *et seq*.

195.   As shown above, Verogen disclosed Plaintiffs' and the putative New Hampshire Class members' genetic information, along with their identities and the fact that they had undergone genetic testing to Qiagen without their written informed consent. Verogen further disclosed Plaintiffs' and the New Hampshire Meta Subclass members' genetic information, along with their identities and the fact that they had undergone genetic testing, to Meta without their written informed consent. These disclosures violated N.H. Rev. Stat. § 141-H:1, *et seq*.

196.   Plaintiffs and the New Hampshire Class and Subclass members have been aggrieved by Verogen's above-described violations of their statutorily protected rights to privacy of their genetic information as set forth in N.H. Rev. Stat. Ann. § 141-H:1, *et seq*.

197.   Based upon Verogen's violations, Plaintiffs and the New Hampshire Classes are entitled to damages in the amount of at least $1,000 for each violation, and costs and reasonable legal fees.

**SIXTH CAUSE OF ACTION**
**Against Defendant Verogen**
**Violation of N. M. S. A. 1978, § 24-21-1, *et seq*.;**
**(By Plaintiffs Radcliffe and Diekmann, Individually and on Behalf of the New Mexico Class)**

198.   Plaintiffs Radcliffe and Diekmann incorporate by reference and re-

AMENDED CLASS ACTION COMPLAINT

allege all paragraphs above.

199.    Plaintiffs Radcliffe and Diekmann are domiciled and suffered injury in New Mexico.

200.    Plaintiffs Radcliffe and Diekmann bring their claim individually and on behalf of the members of the New Mexico Class.

201.    N. M. S. A. 1978, § 24-21-1, *et seq.* prohibits transmitting genetic information of an individual without informed and written consent. "Genetic information" includes information about the genetic makeup of an individual, or the individual's family members.

202.    Plaintiffs Radcliffe and Diekmann and the New Mexico Class members uploaded or had another upload their genetic information to GEDmatch.com. They also provided accompanying personal identifying information, including at least their names and email addresses.

203.    The information Plaintiffs Radcliffe and Diekmann and the Class members had on GEDmatch.com is the type of information protected by N.M.S.A. 1978, § 24-21-1, *et seq.*

204.    As shown above, Verogen disclosed Plaintiffs' and the putative New Mexico Class members' genetic information to Qiagen without their written, informed consent. This disclosure violated the rights of Plaintiff and the New Mexico Class members under N. M. S. A. 1978, § 24-21-1, *et seq.*

205.    Verogen's disclosures resulted from willful or grossly negligent conduct. Verogen knowingly disclosed its entire database of genetic information to Qiagen for financial gain and used it to increase the value of the sale.

206.    Based upon Verogen's violations, Plaintiffs Radcliffe and Diekmann and the New Mexico Class are entitled to damages in the amount of $5,000 for each violation, in addition to any economic loss as the violations resulted from

willful or grossly negligent conduct and costs and reasonable legal fees. N. M. S. A. 1978, § 24-21-6.

**SEVENTH CAUSE OF ACTION**
**Against Defendant Qiagen**
**Violation of N. M. S. A. 1978, § 24-21-3(A),** *et seq.***;**
**(By Plaintiffs Radcliffe and Diekmann, Individually and on Behalf of the New Mexico Class)**

207.    Plaintiffs Radcliffe and Diekmann incorporate by reference and re-allege all paragraphs above.

208.    Plaintiffs Radcliffe and Diekmann are domiciled and suffered injury in New Mexico.

209.    Plaintiffs Radcliffe and Diekmann bring their claim individually and on behalf of the members of the New Mexico Class.

210.    N. M. S. A. 1978, § 24-21-3(A-B), *et seq.* prohibits obtaining, retaining, or using genetic information of an individual without informed and written consent. "Genetic information" includes information about the genetic makeup of an individual, or the individual's family members.

211.    Plaintiffs Radcliffe and Diekmann and the New Mexico Class members uploaded or had another upload their genetic information to GEDmatch.com. They also provided accompanying personal identifying information, including at least their names and email addresses.

212.    The information Plaintiffs Radcliffe and Diekmann the New Mexico Class members uploaded to GEDmatch.com is the type of information protected by N.M.S.A. 1978, § 24-21-1, *et seq.*

213.    As shown above, Qiagen obtained, retained, and used Plaintiffs' and the putative New Mexico Class members' genetic information without their written and informed consent. This conduct violated the rights of Plaintiffs Radcliffe and

AMENDED CLASS ACTION COMPLAINT

Diekmann and the New Mexico Class members under N. M. S. A. 1978, § 24-21-1, *et seq.*

214.  Qiagen's obtainment, retention, and use of the genetic information of all the individuals with DNA files in Verogen's database resulted from willful or grossly negligent conduct. Qiagen knowingly purchased the entire database of genetic information for financial gain and used it to increase its own market value. Then, Qiagen's retention of the DNA analysis results in the GEDmatch.com database undoubtedly added to Qiagen's value. By maintaining control over this extensive genetic database, Qiagen can and has leveraged this valuable resource to offer premium services to law enforcement agencies and forensic investigators, as shown in its new multi-year partnerships with Bode Technology and Othram lab.

215.  Based upon Qiagen's violations, Plaintiffs Radcliffe and Diekmann and the New Mexico Class are entitled to damages in the amount of $5,000 for each violation, in addition to any economic loss as the violations resulted from willful or grossly negligent conduct and costs and reasonable legal fees. N. M. S. A. 1978, § 24-21-6.

### EIGHTH CAUSE OF ACTION
**Against Defendant Verogen**
**Violation of O.R.S. § 192.531, *et seq.***
**(Plaintiffs Delk and Taylor, Individually and on Behalf of the Oregon Class and Meta Subclass, and by Plaintiff Taylor, Individually and on Behalf of the Oregon Non-Consent to Law Enforcement Subclass)**

216.  Plaintiffs Delk and Taylor incorporate by reference and re-allege all paragraphs above.

217.  Plaintiffs Delk and Taylor are domiciled and suffered injury in Oregon.

218.  Plaintiffs Delk and Taylor brings their claim individually and on behalf of the members of the Oregon Class and Meta Subclass. Plaintiff Taylor

AMENDED CLASS ACTION COMPLAINT

also brings his claim on behalf of the Oregon Non-Consent to Law Enforcement Subclass.

219.   Oregon's genetic privacy statute prohibits disclosing "the identify of an individual upon whom a genetic test has been performed, or the identify of a blood relative of the individual, or to disclose genetic information about the individual or a blood relative of the individual in a manner that permits identification of the individual." Or. Rev. Stat. Ann. § 192.539(1).

220.   Plaintiffs Delk and Taylor and the Oregon Class members uploaded or had another upload their genetic information to GEDmatch.com. They also provided accompanying personal identifying information, including at least their names and email addresses. Plaintiff Taylor and the Oregon Non-Consent to Law Enforcement Subclass members did not opt in or consent to law enforcement having access to their genetic information.

221.   The information Verogen obtained from Plaintiffs Delk and Taylor and the Class and Subclass members is the type of information protected by O.R.S. § 192.531, *et seq.*

222.   As shown above, Verogen disclosed Plaintiffs Delk's and Taylor's and the Oregon Class members' genetic information to Qiagen without their written, informed consent.  Verogen also disclosed the identities of Plaintiffs Delk and Taylor and the Oregon Meta Subclass members along with the fact that they have had genetic tests performed to Meta without their informed consent.  Verogen further disclosed Plaintiff Taylor's and the Oregon Non-Consent to Law Enforcement Subclass members' genetic information to law enforcement actors without their written informed consent and against their express wishes. In so doing, Verogen violated O.R.S. § 192.539.

AMENDED CLASS ACTION COMPLAINT

223.     Verogen's disclosures were committed with the intent to sell, transfer or use the genetic information for commercial advantage. Alternatively, the disclosures were knowing or reckless, or at least negligent. The sale of Verogen and the GEDmatch.com database to Qiagen for $150 million was exactly that—a sale and transfer of every user's genetic information for commercial advantage. Similarly, Verogen knowingly disclosed its users' identities and the fact that they had genetic testing performed to Meta to improve Verogen's advertising, and thus, increase profits. Finally, Verogen allowed law enforcement to access the genetic information of the users who had expressly "opted out" of law enforcement access to increase its profit from law enforcement uploads.

224.     Plaintiffs' Delk and Taylor and the Oregon Class and Subclass members' right to genetic privacy have been violated by Verogen's above-described disclosures.

225.     Based upon Verogen's violations, Plaintiffs and the Oregon Class and Subclass members are entitled to damages in the amount of $250,000 for each knowing violation committed with the intent to sell, transfer, or use for commercial advantage, $100,000 for each knowing or reckless violation, $5,000 for each negligent violation, and $1,000 for each inadvertent violation that does not arise out of negligence of the defendant. They are also entitled to costs and reasonable legal fees. Or. Rev. Stat. Ann. § 192.541.

**NINTH CAUSE OF ACTION**
**Against Defendant Qiagen**
**Violation of O.R.S. § 192.531, *et seq.***
**(Plaintiffs Delk and Taylor, Individually and on Behalf of the Oregon Class)**

226.     Plaintiffs Delk and Taylor incorporate by reference and re-allege all paragraphs above.

227.     Plaintiffs Delk and Taylor are domiciled and suffered injury in

Oregon.

228.    Plaintiffs Delk and Taylor brings their claim individually and on behalf of the members of the Oregon Class.

229.    Oregon's genetic privacy statute prohibits compelling the disclosure of "the identify of an individual upon whom a genetic test has been performed, or the identify of a blood relative of the individual, or to disclose genetic information about the individual or a blood relative of the individual in a manner that permits identification of the individual." Or. Rev. Stat. Ann. § 192.539(1).

230.    Plaintiffs Delk and Taylor and the Oregon Class members uploaded or had another upload their genetic information to GEDmatch.com. They also provided accompanying personal identifying information, including at least their names and email addresses.

231.    The information Plaintiffs Delk and Taylor and the Oregon Class members uploaded to GEDmatch.com is the type of information protected by O.R.S. § 192.531, *et seq.*

232.    As shown above, Qiagen compelled the disclosure from Verogen of Plaintiffs' Delk and Taylor and the Oregon Class members' genetic information without their written, informed consent by requiring Verogen to include the database, and access to the database, in the sale. In so doing, Qiagen violated O.R.S. § 192.539.

233.    Qiagen's actions in compelling Verogen to disclose all the genetic information in its GEDmatch.com database were committed with the intent to sell, transfer or use the genetic information for commercial advantage. Alternatively, the disclosures were knowing or reckless, or at least negligent. Qiagen's acquisition of the GEDmatch.com and GEDmatch PRO databases undoubtedly added to Qiagen's value. By gaining access to this genetic database, Qiagen can and has leveraged this

valuable resource to offer premium services to law enforcement agencies and forensic investigators, as shown in its new multi-year partnerships with Bode Technology and Othram lab. The value of the database is the reason Qiagen boasted specifically of its access to this genetic information in the press release announcing its acquisition of Verogen.[28]

234.    Plaintiffs Delk's and Taylor's and the Oregon Class members' right to genetic privacy has been violated by Qiagen's above-described conduct.

235.    Based upon Qiagen's violations, Plaintiffs and the Oregon Class and Subclass members are entitled to damages in the amount of $250,000 for each knowing violation committed with the intent to sell, transfer, or use for commercial advantage, $100,000 for each knowing or reckless violation, $5,000 for each negligent violation, and $1,000 for each inadvertent violation that does not arise out of negligence of the defendant. They are also entitled to costs and reasonable legal fees. Or. Rev. Stat. Ann. § 192.541.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of all others similarly situated, seek a judgment against Defendants as follows:

A.    For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Classes and Plaintiff's attorneys as Class Counsel to represent the Classes;

B.    For an order declaring that Defendants' conduct violates the statutes referenced above;

C.    For an order finding in favor of Plaintiffs and the Classes and against Defendants on all counts asserted herein;

---

[28] *Supra*, at 8.

D. For all injunctive release the court finds appropriate;

E. For compensatory, statutory, and punitive damages in amounts stated above and to be determined by the Court and/or jury;

F. For prejudgment interest on all amounts awarded; and

G. For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees and expense and costs of suit.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated: November 22, 2024                    Respectfully Submitted,

**HEDIN LLP**

By:  _/s/ Frank S. Hedin_
Frank S. Hedin (SBN 291289)
**HEDIN LLP**
535 Mission Street, 14th Floor
San Francisco, CA 94105
Telephone:  (305) 357-2107
Facsimile:   (305) 200-8801
E-Mail:       fhedin@hedinllp.com

*Counsel for Plaintiffs and Putative Class*

AMENDED CLASS ACTION COMPLAINT