UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELA HUTCHESON; SARA LAFLER; ALUCARD TAYLOR; KAMA DELK; ERIN RADCLIFFE; MIKHAILA DIEKMANN; CHELSEA GARDNER; ANDREW STARIN; SHARYL YEISLEY; and ERICA NATHAN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>VEROGEN, INC D/B/A GEDMATCH; and QIAGEN NORTH AMERICAN HOLDINGS, INC.,<br><br>Defendants. | Case No. 3:24 CV 1977 JES MMP<br><br>**AFFIDAVIT OF TOM OSYPIAN IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)**<br><br>Judge:   Hon. James E. Simmons., Jr. |

I, Tom Osypian, pursuant to 28 U.S.C. § 1746 relating to unsworn affidavits under penalty of perjury, do depose and state:

1. I am over 18 years of age and am providing this affidavit as Associate Director HID GEDmatch Product Manager at QIAGEN North American Holdings, Inc. ("QIAGEN N.A.") and as an individual with first-hand knowledge of the GEDmatch database. I have held the position of Associate Director HID GEDmatch Product Manager since April 2023. Prior to that time, I was the Senior Digital Marketing Manager for Verogen, Inc. ("Verogen") (which was acquired by QIAGEN N.A. in January 2023); I held that position from January 2020 to April 2023. I make this affidavit, and could competently testify in open court as to these matters, based on my personal knowledge of GEDmatch's operations, system, and database, including after the acquisition of Verogen by QIAGEN N.A.

**Establishing a GEDmatch Account**

2. In the course of my employment, I am familiar with the way in which a new user sets up an account on the GEDmatch.com website. Before July 2024, GEDmatch users were shown the entire Terms of Service and Privacy Policy at the time that they created their user account, and they had to actively click an "accept" button to accept the Terms and Service and acknowledge the Privacy Policy. A user is not permitted to create an account unless the user indicates his or her consent to the Terms of Service and Privacy Policy. All users are provided notice by email when the Terms of Service and Privacy Policy are updated.

**Meta Pixel**

3. In the course of my employment, I had access to and am familiar with the marketing tools used on the GEDmatch.com website, including the Meta pixel, which was installed on the GEDmatch.com website on January 27, 2020. The Meta pixel was configured on the GEDmatch.com website for general pageview captures and, at times, included triggers such that it would fire when a user engaged in certain activity, such as uploading a DNA kit. At no point prior to January 27, 2020, was the Meta pixel installed on the GEDmatch.com website.

4. The Meta pixel was configured this way to keep count of the number of users who uploaded their DNA kits to the website and, when a DNA kit was uploaded, the pixel transmitted certain information to Meta about each such "event."

**Verogen Acquisition**

5. Verogen was acquired by QIAGEN N.A. in January 2023. Immediately following the acquisition, only legacy Verogen employees had access to the GEDmatch database, just as they did prior to the acquisition. Following the acquisition, QIAGEN N.A. has hired some new employees to work specifically and solely on GEDmatch services and with the GEDmatch database. Those dedicated employees never had access to any other QIAGEN technologies or systems. Similarly, no QIAGEN employees, other

2

than those specifically transitioning from Verogen or hired exclusively for GEDmatch, have access to the GEDmatch database. Since the acquisition, and to this day, neither QIAGEN N.A., nor its parent entities, have access to the GEDmatch database.

6. Following the acquisition, the GEDmatch database was used in the same manner and for the same purposes as it had been used prior to the acquisition and any data contained in the database continue to be governed by and used consistent with the GEDmatch privacy policies, security practices, and Terms of Service.

**GEDmatch PRO and the "Loophole"**

7. For background, GEDmatch allows its users to decide between "opt-in," "opt-out," "personal research," and "private" user preferences.

8. The "opt-in" preference will allow comparison of a user's DNA kit to all others in the database, including criminal profiles submitted by law enforcement to identify perpetrators of violent crimes. Per GEDmatch's Terms of Service, "violent crime" is defined as those crimes involving murder, nonnegligent manslaughter, aggravated rape, robbery or aggravated assault. This preference will also include matching with kits used for personal genealogy, adoptee searches, and unidentified human remains.

9. The "opt-out" preference will allow comparison of a user's DNA kit to all others in the database, like the "opt-in" preference, except that it will not compare a user's DNA kit with criminal kits submitted by law enforcement to identify perpetrators of violent crimes.

10. The "personal research" preference also compares a user's DNA kit to all others in the database, like the "opt-in" and "opt-out" preferences, except that the user's DNA kit will not be shown in match result reports generated for other kits (including kits submitted by or on behalf of law enforcement).

3

AFFIDAVIT OF TOM OSYPIAN IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

11. The "private" preference prevents the user's DNA kit from being available for any comparisons or matching with other GEDmatch users or criminal kits uploaded by law enforcement, or on their behalf.

12. GEDmatch offers a dedicated platform designed to support law enforcement and forensic teams in their investigations by providing access to the GEDmatch database. The law enforcement specific platform is called "GEDmatch PRO." In the course of my employment with Verogen, Inc. and with QIAGEN N.A., I have become personally familiar with the operation of the GEDmatch PRO platform and the alleged law enforcement "loophole" described in Plaintiffs' Amended Class Action Complaint.

13. In 2023, Verogen discovered through a Facebook discussion board that certain forensic and law enforcement agencies, and genetic genealogists working on behalf of law enforcement agencies, may have been manipulating the GEDmatch PRO and GEDmatch platforms in a way that allowed them to manually circumvent a GEDmatch user's privacy preferences. When a GEDmatch PRO user uploaded an unknown perpetrator of a violent crime into the database, the search would be run against those who "opted-in" to be compared to those searches, but not for those who "opted-out." However, it was discovered that if a GEDmatch PRO user utilized a specific tool designed to compare a pre-selected set of DNA kits and then moved the violent crime profile out of the "primary position" in the set list of DNA kits, and used a GEDmatch DNA kit number in the primary position, and then manually entered known opted-out DNA profiles, the tool could be then used to compare those opted-out users with the violent crime profile. But the use of this "loophole" did not cause a search to be run against the entire GEDmatch database; rather, the profiles of users who had opted out could only be accessed by manually moving the criminal kit number out of the primary search position and manually inserting a different kit number known to the GEDmatch PRO user.

14.     The manual manipulation of search results in this way was done without Verogen's knowledge and was explicitly against the terms and conditions to which GEDmatch PRO users had agreed.

15.     This ability to manually manipulate the "matches" with a criminal profile may have been taken advantage of by certain GEDmatch PRO users from sometime in 2018 through August 10, 2023. Verogen promptly fixed the loophole upon discovering it.

16.     GEDmatch does not have a record of how violent crime profiles are searched in GEDmatch PRO or what additional searches may have been conducted from that initial violent crime profile search in GEDmatch, so there is no way to determine which GEDmatch users' data may actually have been accessed by GEDmatch PRO users during this time.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on: 7/14/2025            ___Tom Osypian_____

                                                    Tom Osypian
                                                    Assoc. Dir. HID GEDmatch Product Mgr.