SEYFARTH SHAW LLP
Aaron Belzer (SBN 238901)
abelzer@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone: (310) 277-7200
Facsimile: (310) 201-5219

SEYFARTH SHAW LLP
Kristine R. Argentine (*pro hac admitted*)
kargentine@seyfarth.com
Paul Yovanic, Jr. (*pro hac admitted*)
pyovanic@seyfarth.com
233 South Wacker Drive, Suite 8000
Chicago, Illinois 60606-6448
Telephone: (312) 460-5000
Facsimile: (312) 460-7000

Attorneys for Defendants Verogen, Inc. and
Qiagen North America Holdings, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

ANGELA HUTCHESON; SARA LAFLER; ALUCARD TAYLOR; KAMA DELK; ERIN RADCLIFFE; MIKHAILA DIEKMANN; CHELSEA GARDNER; ANDREW STARIN; SHARYL YEISLEY; ERICA NATHAN; PHYLLIS NICHOLS; KIRSTEN CURLEY; ROBIN COOK; and LAWRENCE NOVIDA, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

VEROGEN, INC. D/B/A GEDMATCH; and QIAGEN NORTH AMERICA HOLDINGS, INC.; and META PLATFORMS, INC.

Defendants.

Case No. 24-CV-1977-JES-MMP

**DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)**

Date: November 12, 2025
Time: 10:00 a.m. PST
Judge: Hon. James E. Simmons, Jr.
Date Action Filed: October 24, 2024

**TABLE OF CONTENTS**

SUMMARY ..... 1

RELEVANT BACKGROUND ..... 2

ARGUMENTS ..... 5

I. Nichols and Curley Lack Standing to Assert a Sale Claim Against Verogen or QIAGEN Under Illinois Law Pursuant to Fed. R. Civ. P. 12(b)(1) Because They Fail to Allege a Concrete Harm (Counts 3 and 4). ..... 5

II. Plaintiff Cook Lacks Standing Under Fed. R. Civ. P. 12(b)(1) to Bring A Claim Under CIPA (Count 12). ..... 6

III. Plaintiffs Nichols's and Curley's Meta Pixel Claim Under the GIPA Fails to State A Plausible Claim on Which Relief Can Be Granted (Counts 3 and 4). ..... 7

IV. Plaintiffs Cook's and Novida's CIPA Claim Against Verogen (Count 12) Should Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6). ..... 8

A. Plaintiffs Cook's and Novida's CIPA Claims are Time-Barred. ..... 8

B. Plaintiffs Cook's and Novida's CIPA Claim Fails to State a Claim. ..... 9

V. Plaintiffs Have Failed to Plausibly Allege that Verogen or QIAGEN Disclosed Their Genetic Information to Bode Technology and Their Claims Relating to this "Disclosure" Should Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6). ..... 13

CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Beltran v. Drs. Med. Ctr. of Modesto*,
2025 WL 1635467 (E.D. Cal. June 9, 2025) .......... 11

*Brodsky v. Apple, Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) .......... 8, 10

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 9

*In re Google Inc.*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) .......... 9

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 10

*King v. Hard Rock Cafe Int'l (USA), Inc.*,
2025 WL 1635419 (E.D. Cal. June 9, 2025) .......... 11

*L.B. v. LinkedIn Corporation*,
2025 WL 2782588 (N.D. Cal. Sep. 30, 2025) .......... 11, 12

*Licea v. Old Navy, LLC*,
2023 WL 3012527 (C.D. Cal. Apr. 19, 2023) .......... 9

*Love v. Ladder Fin., Inc.*,
2024 WL 2104497 (N.D. Cal. May 8, 2024) .......... 12

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) .......... 9

*Mikulsky v. Bloomingdale's, LLC*,
713 F. Supp. 3d 833 (S.D. Cal. 2024) .......... 11

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) .......... 7

*Williams v. What If Holdings*,
2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) .......... 9

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 11

*In re Zynga Privacy Litigation*,
750 F.3d 1098 (9th Cir. 2014) .......... 10

**State Statutes**

Cal. Civ. Proc. Code § 340 .......... 8
Cal. Invasion of Privacy Act § 631 .......... 4, 9
Cal. Invasion of Privacy Act § 632 .......... 4
Cal. Penal Code § 631(a) .......... 9
Cal. Penal Code § 637.2 .......... 4
California Invasion of Privacy Act ("CIPA") .......... *passim*
California Unfair Competition Law (UCL) .......... 4
Electronics Communication Privacy Act .......... 9
Illinois Genetic Information Privacy Act .......... 8

**Rules**

Fed. R. Civ. P. 12(b)(1) .......... 1, 5, 6
Fed. R. Civ. P. 12(b)(6) .......... *passim*

Defendants Verogen, Inc. ("Verogen") and Qiagen North America Holdings, Inc. ("QIAGEN") (collectively, "Defendants"), by and through their undersigned counsel, hereby submit this supplemental memorandum of points and authorities in support of dismissal of Plaintiffs' Second Amended Complaint ( or "SAC," Dkt. 29) pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) and state the following:

## SUMMARY

Plaintiffs' Second Amended Complaint fails to cure the fundamental deficiencies previously identified in Defendants' Motion to Dismiss the First Amended Complaint. Instead, it introduces new plaintiffs, new claims, and a new defendant—Meta Platforms, Inc. ("Meta") —without establishing standing or plausibly alleging violations of law. Defendants respectfully submit this supplemental memorandum to address the newly asserted claims and parties, while incorporating by reference their original arguments.

The Second Amended Complaint's expanded allegations remain legally insufficient. The new Illinois plaintiffs (Nichols and Curley) lack standing under Rule 12(b)(1) to assert Sale claims, as they fail to allege any concrete harm stemming from QIAGEN's acquisition of Verogen. Their Meta Pixel claims under Illinois law also falter under Rule 12(b)(6), as Plaintiffs do not plausibly allege disclosure of protected genetic information or identifiable data.

The newly-added California plaintiffs (Cook and Novida) similarly lack standing to assert claims under the California Invasion of Privacy Act ("CIPA"), as their alleged injuries predate the installation of the Meta Pixel on GEDmatch.com. Moreover, their CIPA claims are time-barred and fail to allege the interception of "content" or that Meta "read or attempted to read" any communications, as required under the statute.

Finally, Plaintiffs' sweeping allegations regarding the disclosure of genetic data to Bode Technology are unsupported by the cited study and fail to plausibly establish that any named Plaintiff's genetic information was accessed or disclosed. GEDmatch's publicly available database was used by Bode researchers in the same manner as any registered user

uses it, and no facts support the claim that Verogen or Qiagen "made the database available" to Bode in violation of state genetic privacy laws.

For these reasons, and those set forth in the original Motion to Dismiss, the Second Amended Complaint should be dismissed in its entirety.

## RELEVANT BACKGROUND

***Procedural History***

Currently pending before the Court is Defendants' Motion to Dismiss, which attacks the claims and allegations contained in the First Amended Complaint (or "FAC," Dkt. 4) brought by Plaintiffs Hutcheson, Lafler, Taylor, Delk, Radcliffe, Diekmann, Gardner, Starin, Nathan, and Yeisley, and which asserts causes of action under various genetic privacy statutes, including those of Alaska, Illinois, New Hampshire, New Mexico, and Oregon. (*See* Motion to Dismiss, Dkt. 18.) As stated in the Motion to Dismiss, the Plaintiffs named in the FAC assert claims that fall into three different "buckets": "Sale claims," "Meta claims," and "Law Enforcement claims." (*See id.*, *generally*.)

Following the Court's September 17, 2025 Order (Dkt. 28), and while the Motion to Dismiss the FAC was pending, Plaintiffs filed a Second Amended Complaint, which introduced four additional Plaintiffs, a new Defendant (Meta), and new claims against Defendants and Meta. The Court's Order permitted Defendants to address any new deficiencies arising from the SAC. (Dkt. 28.) Accordingly, Defendants now submit this supplemental filing and incorporate by reference arguments from the Motion to Dismiss where applicable.[1]

As stated, the SAC introduces several new claims and allegations but fails to address or cure any of the deficiencies raised in the Motion to Dismiss that attacks the FAC. Accordingly, all of the grounds stated for dismissal of the Plaintiffs and claims from the FAC are still valid and relevant to the SAC and this brief serves only to supplement the

---

[1] Counts 5, 9, and 13-17 are against Meta, so Defendants Verogen and QIAGEN do not address these counts in this supplemental filing in further support of their Motion to Dismiss.

arguments made in the Motion to Dismiss with respect to the newly asserted Plaintiffs and claims against Defendants.

***Additional Illinois Plaintiffs***

Plaintiffs Nichols and Curley are Illinois residents and Facebook users who allege that they uploaded their DNA kits to GEDmatch in 2021 and 2022, respectively. (Dkt. 29 at ¶¶51–60). Both assert that they never provided written, informed consent for their genetic information to be disclosed to QIAGEN or Meta, nor for Meta to intercept their data via tracking technologies. (*Id*.) Nichols and Curley are added to Counts 3 and 4 of the Second Amended Complaint asserting claims against Verogen and QIAGEN, respectfully, under Illinois law, which claims were also asserted in the First Amended Complaint. (*See id*., Counts 3 and 4.) They, along with Plaintiffs Hutcheson and Lafler, seek to represent the proposed "Illinois Class" and "Illinois Meta Class" in Counts 3 and 4 against Verogen and QIAGEN, respectfully. (*Id*.)

***California Plaintiffs and Claim Against Verogen***

Plaintiffs Cook and Novida are California residents who allege that they uploaded their DNA kits to GEDmatch in 2017 and 2024, respectively. (*Id*. at ¶¶100–109). Like Nichols and Curley, they claim they did not consent to any disclosures to QIAGEN or Meta. (*Id*.) These California plaintiffs assert a new Meta claim against Verogen under the California Invasion of Privacy Act ("CIPA") at Count 12 of the SAC and allege that Verogen violated the CIPA by aiding and permitting Meta to intercept their private communications with GEDmatch.com without their consent. Specifically, Cook and Novida allege that Verogen embedded Meta's Pixel tracking technology on its website, which allowed Meta to intercept and collect their data in real time, including the fact that they had undergone genetic testing. (SAC at ¶¶ 331–340.) They further allege that Verogen aided, agreed with, employed, or conspired with Meta to unlawfully intercept these "communications," which they allege constitutes a violation of the CIPA, even if Verogen did not directly intercept the "communications" itself. (*Id*. at ¶¶ 333–336, 342.) Plaintiffs

further allege that Verogen failed to disclose its use of the Pixel and did not obtain consent from users for the interception and transmission of their "communications" to Meta. (*Id*. at ¶¶ 339–340). As a result, Cook and Novida seek, on behalf of themselves and the "California Class,"[2] statutory damages of $5,000 per violation under Cal. Penal Code § 637.2, treble actual damages if applicable, injunctive relief, attorneys' fees, and punitive damages. (*Id*. at ¶¶ 344–345.)

***Meta as a Defendant and Claims Against Meta***

The Second Amended Complaint also adds Meta as a defendant. (*Id*. at ¶ 113.) Plaintiffs allege that Meta received users' genetic information and identities through the Meta Pixel and Conversion API installed on GEDmatch's website. According to the SAC, Meta intercepted this data without consent and used it for advertising and analytics purposes. (*Id*. at ¶¶ 137–160, 182–194.) Plaintiffs further allege that Meta's conduct violated various state genetic privacy statutes, including those of Illinois and New Mexico, as well as California's wiretapping and eavesdropping laws under CIPA §§631 and 632. (*See id.* at Counts 5, 9, and 13-14.) Additional claims against Meta include common law invasion of privacy (intrusion upon seclusion), unjust enrichment, violation of California's Unfair Competition Law (UCL), and invasion of privacy under the California Constitution. (*Id*. at Counts 15-18.)

***Bode Technology***

The SAC also introduces new factual allegations into all of its counts regarding Verogen's and QIAGEN's alleged disclosure of genetic information to third parties, including Bode Technology, a private forensic laboratory. Plaintiffs allege that Verogen and QIAGEN "disclosed" the entire GEDmatch database to Bode by making the GEDmatch database available to Bode to use, without obtaining written, informed consent from users. (SAC ¶¶ 179–181, 223, 233, 245, 257, 289, 298, 316, 327.) These allegations

[2] Defined as "all California residents who, while maintaining a Facebook account, uploaded a DNA profile on Verogen's GEDmatch.com and subsequently had the genetic information pertaining to such DNA profile disclosed to Meta during the applicable limitation period…." (*Id*. at ¶ 207.)

are used to support expanded claims under the genetic privacy statutes of Alaska, Illinois, New Hampshire, New Mexico, and Oregon.

## ARGUMENTS

### I. Nichols and Curley Lack Standing to Assert a Sale Claim Against Verogen or QIAGEN Under Illinois Law Pursuant to Fed. R. Civ. P. 12(b)(1) Because They Fail to Allege a Concrete Harm (Counts 3 and 4).

Plaintiffs Nichols and Curley were added to Counts 3 and 4 of the SAC. Counts 3 and 4 are two sides of the same coin—that being the Sale Claim.[3] Count 3, in part, alleges that in January 2023, as part of its acquisition by QIAGEN, Verogen disclosed the genetic information of all its GEDmatch users, including Plaintiffs, to QIAGEN without their consent (i.e., a Sale Claim). (*See* SAC at ¶¶ 127-136; Count 3.) Conversely, Plaintiffs allege in Count 4 that "QIAGEN compelled Verogen to disclose Plaintiffs' and the Illinois Class members' genetic information, along with their identities and the fact that they had undergone genetic testing without their written, informed consent … as part of the sale." (*Id*. at ¶ 257.) Defendants have challenged these allegations in their pending Motion to Dismiss. (*See* Motion to Dismiss at p. 8.) As detailed in that Motion, Nichols and Curley's Sale Claim fails because, while corporate ownership of Verogen changed following the acquisition, the GEDmatch database continues to be owned, operated, and exclusively accessible to Verogen. (*Id*.) Accordingly, to avoid repetition, Defendants incorporate by reference the arguments set forth in their Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) as the basis for dismissal of Nichols and Curley's Sale Claim asserted in the SAC. (*See id*. at pp. 8-10.)[4]

---

[3] The SAC also makes reference to Bode Technology in several Counts, including Counts 3 and 4. Accordingly, Defendants raise deficiencies specific to Bode Technology in a standalone argument below. *See infra.*, Argument V.

[4] Defendants also incorporate by reference their argument under Fed. R. Civ. P. 12(B)(6) on this same issue as another basis for which Nichols and Curley's Sale Claim fails. (*See id*. at pp. 19-22.)

## II. Plaintiff Cook Lacks Standing Under Fed. R. Civ. P. 12(b)(1) to Bring A Claim Under CIPA (Count 12).

Plaintiff Cook alleges that she created a GEDmatch.com account and uploaded her DNA file on GEDmatch.com in approximately 2017. (*See* SAC at ¶ 101.) And as stated above, Cook, along with Novida, seek to represent a California Class that is defined as "all California residents who, while maintaining a Facebook account, **uploaded a DNA profile on Verogen's GEDmatch.com website and subsequently had the genetic information pertaining to such DNA profile disclosed to Meta** during the applicable limitation period." (*Id*. at ¶ 207, emphasis added.) In other words, Cook's CIPA claim, in which she seeks to represent a California Class against Verogen in Count 12, relates to the time that she uploaded her kit (in 2017), which purportedly resulted in the disclosure of her genetic information to Meta. Plaintiff alleges that "when a person created an account, [and] uploaded a DNA file … Verogen used the Meta Pixel technology it had installed on the website to disclose to Meta …" and "Verogen knew that the Meta Pixel disclosed to Meta its users … and that they had uploaded DNA files to GEDmatch.com." (*Id*. at ¶ 152 and 154.)

In their pending Motion to Dismiss, Defendants argue that other Plaintiffs, like Cook, lack standing to bring a claim related to the Meta Pixel because the time at which they created their accounts and uploaded their DNA kit predates the installation of the Meta Pixel. (*See* Motion to Dismiss, Dkt. 18, p. 6.) Supported by sworn declaration, Defendants confirm that the Meta Pixel was first implemented on GEDmatch.com on January 27, 2020. (*Id*., *see also* Declaration of T. Osypian, ¶ 2, attached thereto.) Plaintiffs further allege that the Meta Pixel was installed in January 2020 (Dkt. 29, ¶ 152), thus pleading themselves out of Court with their own allegations. Accordingly, to avoid repetition, Defendants incorporate by reference the arguments set forth in their Motion to Dismiss under Fed. R.

Civ. P. 12(b)(1) as the basis for dismissal of Cook's CIPA claim asserted in the SAC as well. (*See* Dkt. 18, pp. 5-6.)[5]

**III. Plaintiffs Nichols's and Curley's Meta Pixel Claim Under the GIPA Fails to State A Plausible Claim on Which Relief Can Be Granted (Counts 3 and 4).**

To avoid repetition, Defendants incorporate by reference the arguments set forth in their Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) that Plaintiffs have not alleged facts sufficient to plausibly suggest that Verogen disclosed their identities to Meta and that the Illinois GIPA does not protect the mere fact that a person has taken a genetic test in the past as "genetic information" as the basis for dismissal of Nichols's and Curley's Meta Pixel claims against Verogen and QIAGEN in Counts 3 and 4. (*See* Dkt. 18, pp. 12-17.)

Moreover, while Plaintiffs previously alleged that the FID is "a unique and persistent identifier that allows anyone to look up the user's unique Meta profile and thus identify the user by name" (Dkt. 29, ¶ 144), which Defendants dispute in their Motion to Dismiss and which argument they incorporate herein (*see* Dkt. 18, pp. 12-15), Plaintiffs also now in a conclusory fashion and without any further explanation or detail allege that they can be identified by their internet protocol address ("IP Address"). (Dkt. 29, ¶ 144). But that, too, falls short and cannot satisfy the ordinary person standard applicable in the Ninth Circuit to "identifiable information." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 283 (3d Cir. 2016) (applying the ordinary person standard and finding that "[t]o an average person, an IP address or a digital code in a cookie file would likely be of little help in trying to identify an actual person").[6]

---

[5] Defendants also incorporate by reference their argument under Fed. R. Civ. P. 12(B)(6) on this same issue as another basis for which Cook's CIPA claim fails. (*See id.* at 11-12.)

[6] This argument is applicable to all Plaintiffs and their Meta claims, and not just to Nichols and Curley and Counts 3 and 4.

**IV. Plaintiffs Cook's and Novida's CIPA Claim Against Verogen (Count 12) Should Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6).**

***A. Plaintiffs Cook's and Novida's CIPA Claims are Time-Barred.***

Plaintiffs Cook and Novida allege that they created their GEDmatch.com accounts and uploaded their DNA kits in 2017 and 2024, respectively. (*See* SAC ¶¶ 101 and 106.) They further allege that they never "provided informed, written consent to Meta to intercept [their] genetic information or the fact that [they] had undergone genetic testing." (*Id*. at ¶¶ 102 and 108.) But the only time Plaintiffs allege that the Meta Pixel disclosed that they uploaded a DNA kit is *at the time of upload*. (*See id*. at ¶ 107, definition of California Class.) Therefore, Plaintiffs' alleged CIPA claims accrued at the time of upload.

Plaintiffs' CIPA claims are subject to a one-year statute of limitations. Cal. Civ. Proc. Code § 340; *Brodsky v. Apple, Inc.*, 445 F. Supp. 3d 110, 134 (N.D. Cal. 2020) ("Under the CIPA, the applicable statute of limitations is one year."). Plaintiff Cook's claim—that the Meta Pixel fired when she uploaded her DNA kit and purportedly identified her to Meta as having undergone a genetic test—occurred in 2017, approximately eight years before she filed this lawsuit. And although Plaintiff Novida alleges, vaguely, that he uploaded his DNA kit to GEDmatch.com in 2024, the Court can take judicial notice of the fact that he uploaded his DNA profile to GEDmatch at some time prior to August 21, 2024, more than a year before Plaintiff filed the SAC on September 19, 2025. (*See* Dkt. 29.) This is because Plaintiff Novida was previously a plaintiff in a lawsuit styled *Nichols, et al. v. Meta Platforms, Inc.*, which was originally filed against only Meta in California state court on April 9, 2024 and was subsequently removed to the U.S. District Court for the Northern District of California on May 24, 2024, and in which Plaintiffs alleged that the use of the Meta pixel on the GEDmatch.com website violated California law and Illinois's Genetic Information Privacy Act. (*See* 24-cv-02914, Dkt 1.) Plaintiff Novida was added as a plaintiff to the *Nichols* lawsuit on August 21, 2024. (*Id*. at Dkt. 26.)[7] In that case, Novida

---

[7] The *Nichols* lawsuit was voluntarily dismissed on August 6, 2025. (*See id.* at Dkt. 52.)

similarly alleged that he uploaded his DNA kit in 2024 (*id*. at ¶ 105)—but it would had to have been *before* August 21, 2024, when the amended complaint in that matter was filed.

Accordingly, Plaintiffs Cook's and Novida's CIPA claim against Verogen is time barred and should be dismissed.

### *B. Plaintiffs Cook's and Novida's CIPA Claim Fails to State a Claim.*

Plaintiffs Cook and Novida also fail to sufficiently allege that Verogen aided and abetted Meta to read or attempt to read the content of any alleged communications, so they have failed to state a claim under Section 631 of the CIPA.

Under Section 631(a) of CIPA, there are "three distinct and mutually independent patterns of [unlawful] conduct: [1] intentional wiretapping [of any telegraph or telephone], [2] wilfully (sic) attempting to learn the contents or meaning of a communication in transit over a wire, and [3] attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." *Williams v. What If Holdings*, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022) (quoting *Tavernetti v. Super. Ct. of San Diego County*, 22 Cal. 3d 187, 192 (1978)); *see also* Cal. Penal Code § 631(a); *accord Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021); *In re Google Inc.*, 2013 WL 5423918, at *15 (N.D. Cal. Sept. 26, 2013). Section 631(a) further recognizes a fourth basis for liability, for anyone "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the other three bases for liability." *Mastel*, 549 F. Supp. 3d at 1134. (quoting Cal. Penal Code § 631(a)). Thus, CIPA prohibits any person from using electronic means to "learn the contents or meaning" of any "communication" "without consent" or in an "unauthorized manner." Cal. Pen. Code § 631(a). *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606–07 (9th Cir. 2020). In order to properly plead that Verogen is liable for aiding and abetting Meta's violation of the CIPA, "Plaintiff must first adequately plead [Meta's] underlying violations of the statute." *Licea v. Old Navy, LLC*, 2023 WL 3012527, at *3 (C.D. Cal. Apr. 19, 2023).

First, Plaintiffs here have failed to allege that Meta violated the CIPA because Plaintiff have failed to allege that Meta intercepted the "content" of their alleged communications. Under the Electronics Communication Privacy Act and under the CIPA, the "contents" of a communication means "a person's intended message to another" as distinguished from "record information," such as name, address, or "subscriber number or identity." *In re Zynga Privacy Litigation*, 750 F.3d 1098, 1106 (9th Cir. 2014); *see also Brodsky v. Apple Inc.*, 445 F. Supp. 3d at 127 ("The analysis for a violation of CIPA is the same as that under the Federal Wiretap Act."). In the context of the use of the Meta pixel, the transmission to Meta of one's FID or the webpage address one visited is "record information," not "content." *Id*. at 1107. Even if the fact that a person visited a webpage might reveal certain information about that person, a webpage URL is still record information and not content. *Id*. at 1108. The Ninth Circuit has held, rather, that, "[u]nder some circumstances, a user's request to a search engine for specific information"—like if the URL shows the specific search terms typed into a Google search—"could constitute a communication such that divulging a URL containing that search term to a third party could amount to disclosure of the contents of a communication." *Id*. at 1108-1109. But nowhere do Plaintiffs here allege that, through the use of the Meta pixel, Meta received the contents of any messages or communications, such as search terms or text entries, between Plaintiffs and GEDmatch.com.

In fact, nowhere do Plaintiffs allege what "content" was allegedly intercepted by Meta. Plaintiffs generally allege that Meta "intercepted" their "genetic information or the fact that [they] had undergone genetic testing," but the facts alleged establish that the only alleged "genetic information" at issue is "information that the user had uploaded her DNA file to GEDmatch.com." (Dkt. 29, ¶ 152.) The mere fact that someone uploaded a DNA file is not "a person's intended message to another"—it does not convey the "content" of any "communication" to GEDmatch.com. *See Zynga*, 750 F.3d at 1106; *see also Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1092–93 (N.D. Cal. 2022) ("URLs are

record information when they only reveal a general webpage address and basic identification information, but when they reproduce a person's personal search engine queries, they are contents."); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) ("keystrokes, mouse clicks, pages viewed, and shipping and billing information . . . [and] the date and time of the visit, the duration of the visit, Plaintiff's IP address, her location at the time of the visit, her browser type, and the operating system on her device" were not "contents" of a communication under the CIPA); *Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024) ("button clicks, mouse movements, scrolling, resizing, touches (for mobile browsers), key presses, page navigation, changes to visual elements in the browsers, network requests, and more" were not "content" under the CIPA); *King v. Hard Rock Cafe Int'l (USA), Inc.*, 2025 WL 1635419, at *4 (E.D. Cal. June 9, 2025) ("button clicks" on a website are not content under the CIPA). Further, Plaintiffs do not plead how the fact that they uploaded DNA kits was allegedly captured through a URL or how Meta would have otherwise received that information through the use of the Meta pixel. *See King*, 2025 WL 1635419, at *4 (E.D. Cal. June 9, 2025) (dismissing the plaintiff's CIPA claim because "Plaintiff's FAC is devoid of any allegation describing her search queries" that the Meta pixel allegedly intercepted); *Beltran v. Drs. Med. Ctr. of Modesto*, 2025 WL 1635467, at *11 (E.D. Cal. June 9, 2025) (Plaintiffs had not sufficiently alleged the interception of "content" where "Plaintiffs' complaint d[id] not specify or describe the searches Plaintiffs conducted on the Website."). Because Plaintiffs failed to allege exactly what was intercepted by Meta or how it constitutes "content" within the meaning of the CIPA, their CIPA claim must fail.

Further, Plaintiffs have failed to allege that Meta "read or attempted to read" any alleged "contents" of the alleged "communications." While Plaintiffs generally allege that Meta "processes," "analyzes," and "assimilates" information it receives through the Meta pixel into datasets so that other companies can use this data to direct targeted advertisements to users (Dkt. 29, ¶¶ 147-151), nowhere do Plaintiffs allege that Meta, itself,

ever reads or attempts to read this data or discern any meaning therefrom. In a recent decision involving similar allegations regarding a LinkedIn tracking pixel, the court in *L.B. v. LinkedIn Corporation*, 2025 WL 2782588, *16 (N.D. Cal. Sep. 30, 2025) held that the plaintiffs there had failed to sufficiently allege that the defendant LinkedIn read or attempted to read the alleged contents of any communications between the plaintiffs and the websites where the pixel was used. The plaintiffs there, like Plaintiffs here, alleged that the defendant "organized their communications data into metrics to be used for advertising," but the court held that it was not reasonable to infer from that allegation that the defendant would "read or attempt to read" the communication because the plaintiffs had not presented a "coherent story" regarding how LinkedIn might have read the contents. *Id*. For example, the plaintiffs there "d[id] not allege that they received any targeted advertising after interacting with the challenged websites, a fact that would strengthen the inference that LinkedIn learned about Plaintiffs from reading their communications." *Id*. Plaintiffs here have also not alleged that Meta actually read or otherwise learned anything about the alleged contents or their alleged communications. Plaintiffs have alleged only that Meta effectively collected and stored such information. "Exacting detail of [the defendant]'s data processing is not necessary . . . [h]owever, Plaintiffs must plead additional facts to support the inference that [the defendant] specifically read, attempted to read, or learned the contents of Plaintiffs' communications when using such information to fuel their advertising analytics." *Id*.; *see also Love v. Ladder Fin., Inc.*, 2024 WL 2104497, at *2 (N.D. Cal. May 8, 2024) (dismissing the plaintiffs' CIPA claim because they alleged "no coherent story of how or why [the defendant] would learn such granular information about users of one if its customers' sites"). Plaintiffs have not done that here.

Because Plaintiffs have failed to allege any facts that would plausibly establish the interception by Meta of the contents of any communications between Plaintiffs and GEDmatch.com, or that Meta actually read or attempted to read any information in these

alleged communications, Plaintiffs Cook's and Novida's CIPA claim fails as a matter of law and Count 12 should be dismissed.

**V. Plaintiffs Have Failed to Plausibly Allege that Verogen or QIAGEN Disclosed Their Genetic Information to Bode Technology and Their Claims Relating to this "Disclosure" Should Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6).**

In their SAC, Plaintiffs Yeisley, Nathan, Hutcheson, Lafler, Nichols, Curley, Gardner, Starin, Radcliffe, Diekmann, Delk, and Taylor allege on behalf of the Alaska, Illinois, New Hampshire, New Mexico, and Oregon classes that both Verogen and QIAGEN "disclosed" the entire GEDmatch database, including their respective genetic information, to Bode without their informed consent, which they claim violates the genetic privacy laws of Alaska, Illinois, New Hampshire, New Mexico, and Oregon. (*See* SAC at Counts 1, 2, 3, 4, 6, 7, 8, 10, and 11.) However, these Plaintiffs have failed to plausibly allege that their genetic information was disclosed to Bode Technology because simply making the GEDmatch database available for use does not constitute a disclosure of the genetic information of every person in that database, so Plaintiffs' claims with respect to this alleged disclosure must be dismissed.

Specifically, Plaintiffs allege that "following QIAGEN's acquisition of Verogen, QIAGEN and Verogen collectively disclosed the genetic information of all persons with genetic data in the GEDmatch databases to Bode Cellmark Forensics, Inc. d/b/a Bode Technology ('Bode')—also without notifying, or obtaining any form of consent from, any of these individual—to enable Bode to use the database for genetics research" and that "Verogen and QIAGEN made all of the genetic data in the GEDmatch databases available to Bode to use in performing genealogical comparisons and research." (*Id*. at ¶¶ 179-180.) In support of this allegation, Plaintiffs cite to and rely upon a Technical Summary of a research study authored by various researchers at Bode Technology in Lorton, Virginia: "Comparative Evaluation of Genotyping Technologies for Investigative Genetic Genealogy in Sexual Assault Casework," Bode Technology, June 30, 2024, available at

https://www.ojp.gov/pdffiles1/nij/grants/310017.pdf. (*Id*. at ¶ 180, a copy of the cited study is attached as Exhibit 1.) The technical summary of the study itself confirms, however, that researchers at Bode were not provided with "all of the genetic data in the GEDmatch database"; rather, the researchers used the GEDmatch database simply to upload the results of a genetic test to the database to determine if there were any "matches."

The purpose of the cited study was to "assess[] the ability of genotyping technologies to develop useful profiles from low-template and degraded sexual assault samples for genealogical searching in law enforcement accessible Direct-to-Consumer (DTC) genealogical databases and support rapid, accurate, efficient identification of the samples' source." (*See* Exhibit 1, p. 3.) The study was conducted in two phases, the first of which involved comparing the genotyping/sequencing of three different tools "for sensitivity to low-level DNA input concentrations and specificity for artificially degraded DNA using whole semen and nascent semen DNA samples." (*Id*.) This was done by comparing the genotype profiles generated by each of the tools against "databased genotypes [in the GEDmatch database] in order to determine the maximum distance at which known or potential genealogical associations can be identified." (*Id*.) According to the study, researchers used three test DNA samples and uploaded them to the GEDmatch database: certain samples "were uploaded through GEDmatch Classic as 'Research' samples" but, "[d]ue to changes in the GEDmatch Terms of Service that no longer allow the use of GEDmatch Classic for forensic research," other samples "were uploaded through the PRO portal." (*Id*., p. 8.)

So according to Plaintiffs' allegation and the study on which they rely in their complaint, the Bode Technology researchers were not given all GEDmatch users' genetic information; rather, the GEDmatch database was used in this study as all users use it—to compare their samples against the database to determine if there were any matches. To the extent the finding of a genetic match constitutes a "disclosure" at all, such a "disclosure" would occur only if one of the research samples uploaded actually matched against one of

the Plaintiffs' genetic profiles. None of the Plaintiffs here allege that his or her genetic sample matched against any sample uploaded by Bode Technology and Plaintiffs have failed to allege how their genetic information was allegedly disclosed to Bode researchers if there was no match to their genetic data during the course of the research. Therefore, Plaintiffs' allegations do not establish that the "genetic information" of any named Plaintiff was accessed or viewed by Bode Technology or its researchers. Regardless of whether Plaintiffs consented to this particular use of the GEDmatch database (which they did according to the Terms of Service to which all Plaintiffs agreed), Plaintiffs' genetic information was not "disclosed" to Bode simply because Bode researchers uploaded samples to the GEDmatch database for research purposes.

Further, Plaintiffs have not alleged sufficient facts to support their conclusion that Verogen or QIAGEN "made all of the genetic data in the GEDmatch databases available to Bode to use in performing genealogical comparisons and research." (Dkt. 29 at ¶ 180.) GEDmatch is a publicly-available website on which anyone can register for an account. (*Id*. at ¶ 119.) The fact that the Bode researchers used the GEDmatch database does not lead to the inference that Verogen or QIAGEN "made the database available" to Bode any more than it "makes the database available" to any person who signs up for an account. Plaintiffs have not alleged any facts that would support a conclusion that Verogen or QIAGEN "disclosed" the GEDmatch database to Bode, as opposed to a conclusion that Bode created an account of its own accord.

Accordingly, Plaintiffs' claims with respect to Bode Technology fail and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## CONCLUSION

For the reasons set forth herein, Defendants Verogen Inc. and Qiagen North America Holdings, Inc. respectfully request that the Court deny Plaintiffs' Motion for Leave to File Second Amended Complaint pending its ruling on Defendants' Motion to Dismiss, and for such other relief as the Court deems just and fair.

DATED: October 8, 2025

Respectfully submitted,

SEYFARTH SHAW LLP

By: */s/ Kristine R. Argentine*

Aaron Belzer
Kristine Rinella Argentine
Paul J. Yovanic Jr.
Attorneys for Defendants
Verogen, Inc. and Qiagen North
America Holdings, Inc.