UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ANGELA HUTCHESON; SARA LAFLER; ALUCARD TAYLOR; KAMA DELK; ERIN RADCLIFFE; MIKHAILA DIEKMANN; CHELSEA GARDNER; ANDREW STARIN; SHARYL YEISLEY; ERICA NATHAN; PHYLLIS NICHOLS; KIRSTEN CURLEY; ROBIN COOK; and LAWRENCE NOVIDA, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

VEROGEN, INC. D/B/A GEDMATCH; QIAGEN NORTH AMERICA HOLDINGS, INC.; and META PLATFORMS, INC.,

Defendants.

Case No.: 3:24-cv-01977-JES-MMP

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

**[ECF Nos. 18, 34]**

//

//

//

Before the Court is Defendants' VEROGEN, INC. D/B/A GEDMATCH ("Verogen"), and QIAGEN NORTH AMERICA HOLDINGS, INC. ("Qiagen") (collectively, "Defendants") Motion to Dismiss the Second Amended Complaint under Federal Rules of Civil Procedure ("Rule(s)") 12(b)(1) and 12(b)(6) ("Motion").[1] ECF Nos. 18 ("Mot."), 34.

Plaintiffs Angela Hutcheson ("Hutcheson"), Sara Lafler ("Lafler"), Alucard Taylor ("Taylor"), Kama Delk ("Delk"), Erin Radcliffe ("Radcliffe"), Mikhaila Diekmann ("Diekmann"), Chelsea Gardner ("Gardner"), Andrew Starin ("Starin"), Sharyl Yeisley ("Yeisley"), and Erica Nathan ("Nathan"), (collectively, "Plaintiffs") filed this putative class action on October 24, 2024. ECF No. 1. On November 22, 2024, Plaintiffs filed the First Amended Complaint ("FAC"). ECF No. 4. Defendants Verogen and Qiagen waived service in December 2024. ECF No. 8. The Court granted a series of joint motions to continue Defendants' responsive pleading deadline. ECF Nos. 9-14. On July 14, 2025, Defendants filed a motion to dismiss the FAC, pursuant to Rules 12(b)(1) and 12(b)(6). ECF No. 18. Before the motion was heard, Plaintiffs moved for leave to file a Second Amended Complaint, to add Defendant Meta Platforms, Inc. ("Meta") and supplement their factual allegations. ECF No. 24. The Court granted that motion on September 17, 2025. ECF No 28.

Plaintiffs filed the Second Amended Complaint on September 19, 2025. ECF No. 29 ("SAC"). The SAC asserts claims arising from three categories of conduct: (1) Verogen's installation of Meta tracking technology on GEDmatch.com (the "Meta Claims"); (2) a technical loophole that allegedly allowed law enforcement to circumvent user opt-out privacy settings (the "Law Enforcement Claims"); and (3) Qiagen's acquisition of Verogen and the GEDmatch database (the "Sale Claims"). *Id*.

---

[1] The Court notes that Defendant Meta Platforms, Inc. appeared in this action on November 21, 2025, and is not a movant on the pending motion. ECF Nos. 43–45.

The Court Ordered Defendants to file Supplemental Briefing to their Motion to Dismiss, directed at the SAC, which Defendants filed on October 8, 2025. ECF No. 34. Plaintiffs filed the Opposition on October 29, 2025, and Defendants filed the Reply on November 5, 2025. ECF Nos. 37, 39. The Court held a hearing on November 12, 2025, and took the Motion under submission. ECF No. 41. For the reasons stated below, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

Verogen owns and operates GEDmatch.com, a free genealogical research platform that allows users to upload raw DNA data ("DNA kits") previously obtained from commercial genetic testing services such as AncestryDNA, 23andMe, or FamilyTreeDNA. SAC ¶¶ 1–2, 6. Users upload their DNA kits to compare genetic profiles with others for genealogical purposes. Each Plaintiff created a GEDmatch account and uploaded a DNA kit at some point in the past. SAC ¶¶ 39–109.

As a condition of registration, each Plaintiff agreed to GEDmatch's Terms of Service and Privacy Policy (revised May 18, 2019). ECF No. 18-2 ("TOS"). The TOS expressly discloses that GEDmatch "reserves the right to provide access to your data (including Raw Data, Genealogy Data, profile information, and other personal information) to those other individuals or entities" in the event GEDmatch "will merge with, or operations will be transferred to other individuals or entities." TOS at 7. Users who selected the opt-out privacy setting were permitted to exclude their profiles from being matched against law enforcement DNA uploads for violent-crime identification purposes, while remaining subject to other comparative uses. SAC ¶ 120.

In January 2020, Verogen installed Meta's tracking pixel (the "Meta Pixel") on GEDmatch.com. ECF No. 18-4, ("Osypian Decl."), ¶ 3. The Meta Pixel was configured to capture page views and, at certain times, DNA kit upload events, transmitting user activity data—including Facebook ID numbers ("FIDs")—to Meta. *Id.*; SAC ¶¶ 140-145. Several Plaintiffs allege they were Facebook account holders, who used GEDmatch.com while the Pixel was operational. *Id.* ¶¶ 39, 46, 51, 56, 61, 67, 72, 77, 82, 86.

In January 2023, Qiagen acquired Verogen for $150 million. *Id*. ¶ 112. Following the acquisition, Verogen continued to operate as a separate legal entity. Osypian Decl. ¶¶ 5-6. But Defendants represent that access to the GEDmatch database remained restricted to legacy Verogen employees and those hired to work on GEDmatch services. *Id*. Plaintiffs allege, however, that Qiagen required inclusion of the GEDmatch database as part of the acquisition, obtained "full access" to the database, and subsequently entered into commercial arrangements—including with Bode Technology and Othram—leveraging GEDmatch PRO tools. SAC ¶¶ 173-174.

In 2023, Verogen discovered through a Facebook thread that a small number of forensic genealogy practitioners had exploited a technical loophole in the GEDmatch PRO platform for approximately four years. Osypian Decl. ¶ 13; SAC ¶¶ 164, 247. The loophole allowed a GEDmatch PRO user, after initially uploading a criminal DNA profile, to manually substitute a non-criminal kit number in the primary search field and re-run the comparison, against the profiles of users who had opted out of law enforcement comparisons. Osypian Decl. ¶ 13. Verogen publicly disclosed this issue in a press release on November 13, 2023. SAC ¶ 164 n. 21. Plaintiffs allege eighteen causes of action related to the alleged disclosure of DNA kits to law enforcement, the Meta Pixel and to Qiagen under several state statutes, including Alaska, Illinois, New Hampshire, New Mexico, Oregon and California. *Id.* ¶¶ 216-345.

## II. LEGAL STANDARD

### A. Rule 12(b)(1) Lack of Subject Matter Jurisdiction

A motion to dismiss under Rule 12(b)(1) challenges the subject matter jurisdiction of the action. Fed. R. Civ. P. 12(b)(1). A complaint must be dismissed for lack of subject matter jurisdiction where a plaintiff lacks Article III standing. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The plaintiff bears the burden of establishing jurisdiction. *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986). To establish standing, a plaintiff must demonstrate: (1) an injury in fact; (2) a causal connection between the injury and the challenged conduct; and (3) redressability by a favorable decision. *Spokeo, Inc. v.*

*Robins*, 578 U.S. 330, 338 (2016). The injury in fact must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id*. "[N]o concrete harm, no standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021).

Where a jurisdictional question is "intertwined with the merits" — that is, where resolution of the jurisdictional issue requires the court to resolve issues of fact going to the merits — the court may not properly resolve the issue under Rule 12(b)(1). *Safe Air for Everyone*, 373 F.3d at 1039–40. In that circumstance, the motion should be resolved under Rule 12(b)(6) rather than converted into a jurisdictional dismissal. *Id*.

**B. Rule 12(b)(6) — Failure to State a Claim**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim tests the legal sufficiency of a plaintiff's claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When considering the motion, the court must accept as true all well-pleaded factual allegations in the complaint. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court need not accept as true legal conclusions cast as factual allegations. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient).

A complaint must "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. To survive a motion to dismiss, a complaint must include non-conclusory factual content. *Id.* at 555; *Iqbal*, 556 U.S. at 679. The facts and the reasonable inferences drawn from those facts must show a plausible—not just a possible—claim for relief. *Twombly*, 550 U.S. at 556; *Iqbal*, 556 U.S. at 679; *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). The focus is on the complaint, as opposed to any new facts alleged in, for example, the opposition to a defendant's motion to dismiss. *See Schneider v. California Dep't of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998), *reversed and remanded on other grounds as stated in* 345 F.3d 716 (9th Cir. 2003). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The "mere possibility of misconduct" or "unadorned, the defendant-

unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss*, 572 F.3d at 969.

When a court dismisses a complaint under Rule 12(b)(6), it must then decide whether to grant leave to amend. Federal Rule 15(a) provides that a district court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). A district court has discretion to deny leave to amend when a proposed amendment would be futile. *Chappel v. Lab. Corp. of America*, 232 F.3d 719, 725-26 (9th Cir. 2000). Dismissal without leave to amend is appropriate only when the Court is satisfied that the deficiencies of the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003). In other words, if allowing a party to amend its pleading would be futile, district courts properly decline to grant leave to amend. *Thinket Ink Info. Res., Inc. v. Sun Microsys., Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004) (citing *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991)).

## III. DISCUSSION

### A. The Law Enforcement Claims

Defendants move to dismiss the Law Enforcement Claims under Rules 12(b)(1) and 12(b)(6). The Court rejects both grounds.

For approximately four years, a technical loophole in the GEDmatch PRO platform allowed law enforcement users to circumvent the opt-out privacy setting and run comparisons against profiles of users who had specifically restricted such access. SAC ¶¶ 164. Hutcheson and Taylor allege that they are among the users who elected the opt-out setting, expressly directing Verogen not to disclose their genetic information to law enforcement. *Id.* ¶¶ 42, 64.

#### 1. Rule 12(b)(1)

Defendants argue that Plaintiffs Hutcheson and Taylor lack standing because neither can establish that their specific profiles were accessed through the alleged loophole. Mot. at 7-8. That argument implicates whether a prohibited disclosure actually occurred, as to each Plaintiff. Such a question is intertwined with the merits of the statutory claims, and

its resolution cannot be converted into a threshold jurisdictional inquiry. *See Safe Air for Everyone*, 373 F.3d at 1039–40.

The Court, accordingly, **DENIES** the Motion as to the Law Enforcement Claims under Rule 12(b)(1).

**2. Rule 12(b)(6)**

Defendants advance two arguments for dismissal under Rule 12(b)(6). First, Plaintiffs have not plausibly alleged an actual disclosure because the SAC alleges only the possibility of unauthorized access, not that their specific DNA profiles were in fact accessed. Mot. at 22-23. Second, even if access occurred, Plaintiffs have not alleged that any such access exceeded the scope of their express consent, as users who selected the opt-out setting consented to certain categories of law enforcement access. *Id*. The Court discusses each in turn.

The Ninth Circuit has recognized that the unauthorized collection and use of highly personal information through tracking technology may constitute a cognizable privacy injury. *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1270–71 (9th Cir. 2019) (holding that a statutory privacy violation is legally cognizable where it "actually harm[s] or present[s] a material risk of harm" to concrete privacy interests, and rejecting the notion that such injuries are inherently intangible or speculative); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 596–601 (9th Cir. 2020) (holding that the unauthorized interception and transmission of users' personal information, without their knowledge or consent, stated a viable claim for harm to interests in controlling one's own personal information).

Although the type of personal information implicated in this case differs from that in *Patel* and *In re Facebook*, the Court finds the principle established in those cases, applies here as well. The reason for this is the case's subject matter: genetic information—which is categorically more sensitive than biometric identifiers or browsing history. This is because such information is immutable, hereditary, and capable of revealing the most intimate details of a person's biology, health, and family relationships.

With that principle in mind, the Court finds that the SAC's allegations describe more than theoretical vulnerability. SAC ¶ 164. They allege an operational system, actual exploitation over a multi-year period, and a defined class of profiles to which unauthorized access was obtained. *Id*. ¶¶ 162-169. Unauthorized access to genetic profiles by law enforcement actors, against users' expressed preferences, presents at the very least, a substantial privacy invasion. *See Patel*, 932 F.3d at 1270–71; *see also In re Facebook*, 956 F.3d at 596–601.

At the pleading stage, Plaintiffs need not prove that their specific profiles were accessed. *Twombly*, 550 U.S. at 545. Rather, only that it is plausible that they were, given the scope of the loophole and the period of its alleged exploitation. *Id*. the Court, therefore, concludes that the SAC adequately alleges facts from which such plausibility can be inferred.

Turning to Defendants' second argument, the Court notes two reasons why this is an inappropriate basis for dismissal. *See* Mot. 22-23. First, this argument is directly contradicted by the SAC—which alleges that Plaintiffs selected the opt-out setting, specifically, to restrict law enforcement access to violent-crime investigations and that the loophole circumvented that restriction. SAC ¶¶ 42, 64, 120, 161–170. Second, whether the scope of the consent that was given by opt-out users, and whether the challenged access exceeded that scope, are questions of fact that are not appropriately resolved at the pleading stage. Further, whether the opt-out users consented to investigative comparisons beyond the categories expressly permitted by the TOS, is a merits question that requires factual development. Thus, Defendants' second argument is not a sufficient basis for dismissal at this stage.

The Court, accordingly, **DENIES** the Motion as to the Law Enforcement Claims under Rule 12(b)(6).

//

//

//

### B. Meta Pixel Claims

The Meta Pixel Claims require plaintiff-specific analysis. Not all named Plaintiffs asserting Meta Claims are in the same position, and the Court does not resolve all aspects of Defendants' challenges to the Meta Claims at this stage.

#### 1. Pre-Pixel Timing

Defendants contend that the Meta Pixel was not installed on GEDmatch.com until January 27, 2020. Osypian Decl. ¶ 3. Several Plaintiffs asserting Meta Claims allege DNA kit uploads that predate the Pixel. SAC ¶¶ 40, 47, 62, 68, 83, 87, 101 (alleging that Hutcheson uploaded in 2018, Lafler in 2016; Taylor in 2019; Delk in 2018; Gardner in 2019; and Starin in 2016 and 2017, Cook in 2017). To the extent any of these Plaintiffs' claims depend exclusively on the proposition that their initial DNA kit upload was captured by and transmitted through the Meta Pixel, those claims fail because the Pixel was not operational at the time of their uploads. Moreover, the SAC does not address whether these Plaintiffs engaged in any subsequent activity on GEDmatch.com, during the period the Pixel was operational. *See generally* SAC. Thus, those Plaintiffs have not alleged any other mechanism by which Meta could have received information through the Pixel regarding those particular upload events. *Id*.

A plausible Meta Pixel claim, however, may exist with the provision of additional factual detail. The Court, accordingly, declines to foreclose that possibility on the current record. The Court, therefore, **GRANTS** the Motion with respect to Plaintiffs Hutcheson, Lafler, Taylor, Delk, Gardner, and Starin's Pre-Pixel Meta Claims premised solely on the upload transmission theory. These claims are, accordingly, **DISMISSED** without prejudice and with leave to amend.

#### 2. FID / Identification Allegations

Defendants argue that Plaintiffs have not adequately alleged that the transmission of a Facebook ID number ("FID") to Meta constituted disclosure of their "identities" as required by the Illinois, Oregon, and New Hampshire statutes. Mot. at 17-18; *see* 410 ILCS 513/30; ORS 192.539(1); N.H. Rev. Stat. Ann. § 141-H:2. Defendants rely on the "ordinary

person" identifiability standard developed in the context of the Video Privacy Protection Act. *Id.*; *see Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017). Under that standard, information is identifiable if it would readily permit an ordinary person to identify a specific individual. *Eichenberger*, 876 F.3d at 985.

Courts in this Circuit have held that a bare FID, without more, does not satisfy this standard, absent allegations that the plaintiff's Facebook profile is publicly accessible and contains sufficient identifying information. Mot. at 18-20; *see Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 857–58 (C.D. Cal. 2024); *Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023). However, the Ninth Circuit has recognized that the collection and transmission of information about an individual's personal online activities through tracking technology may constitute a privacy violation, even where the identifying mechanism requires some degree of aggregation or inference. *In re Facebook*, 956 F.3d at 596–601.

But the SAC alleges, generally, that the FID "allow[s] anyone to look up the user's unique Meta profile and thus identify the user by name," without specifying what information Plaintiffs' profiles actually contain or whether those profiles are publicly accessible. SAC ¶ 145. The Court, therefore, finds the SAC's allegations are sufficiently plausible to avoid dismissal. *See In re Facebook,* 956 F.3d at 596–601 (recognizing that the collection and transmission of information capable of revealing an individual's personal activities may implicate protected privacy interests). Thus, the Motion on this ground is **DENIED**.

**3. Fact of Genetic Testing**

Defendants urge the Court to adopt the categorical rule that information revealing that a person merely underwent genetic testing, as distinct from the results of that test, falls outside the protection of the Illinois GIPA, Oregon genetic privacy statute, and the New Hampshire genetic privacy law. Mot. at 16, 20-22 (citing 410 ILCS 513/30(a); 410 ILCS 513/31.7; Illinois House Transcript, 2008 Reg. Sess. No. 276; ORS 192.531(7), (9), (11);

ORS 192.533(2); ORS 192.539(1); N.H. Rev. Stat. Ann. § 141-H:2). At the pleading stage, the Court declines to do so.

The Illinois GIPA provides that "[n]o person may disclose . . . the identity of any person upon whom a genetic test is performed or the results of a genetic test in a manner that permits identification of the subject of the test." 410 ILCS 513/30(a). Defendants read this provision as protecting only the disclosure of test results linked to an identified person, not the mere fact that testing was conducted.

When read in isolation, the statutory text is susceptible to that construction. But the outer boundaries of what information each statute protects, in the circumstances alleged here, presents a question of statutory interpretation. Indeed, it is one that should not be resolved against Plaintiffs on a categorical basis without fuller briefing, factual development, and authoritative support. Notably, the Ninth Circuit has not adopted such a categorical rule in this context. *See In re Facebook*, 956 F.3d at 596–601. Accordingly, the Motion, on this theory is **DENIED**.

### C. California Invasion of Privacy Act Claim

Defendants argue that Cook and Novida's California Invasion of Privacy Act ("CIPA") claim premised on the alleged disclosure to Meta should be dismissed because it is time-barred and the SAC fails to plausibly allege that Defendants aided and abetted Meta to read or attempt to read the content of any alleged communications. ECF No. 34 at 12-16. Plaintiffs argue that the CIPA claim should not be dismissed at the pleading stage and the SAC plausibly alleges a CIPA violation. ECF No. 37 at 32-38.

#### 1. Statute of Limitations

The Court may grant a motion to dismiss based on the statute of limitations "[i]f the running of the statute is apparent on the face of the complaint." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). However, "[a]s it is usually raised as an affirmative defense rather than in a motion to dismiss, the Court must be cautious in dismissing a complaint based upon the statute of limitations' expiration." *Paplekaj v. FCA US, LLC*, No. 24-cv-1717-MMA-VET, 2025 WL 863472, at *2 (S.D. Cal. Mar. 19, 2025). "If the

statute of limitations question turns on factual issues that may be disputed, it should be addressed at a later stage." *Anthony v. County of San Diego*, No. 25-CV-00310-DMS-MMP, 2025 WL 4076514, at *6 (S.D. Cal. Oct. 8, 2025) (internal quotations omitted). Additionally, the motion should not be granted if the plaintiff could possibly prove the statute was tolled. *See Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206-07 (9th Cir. 1995).

CIPA is subject to a one-year statute of limitations. Cal. Civ. Proc. Code § 340; *Brodsky v. Apple, Inc.*, 445 F. Supp. 3d 110, 134 (N.D. Cal. 2020). The SAC alleges that Plaintiffs Cook and Novida created their GEDmatch.com accounts and uploaded their DNA kits in 2017 and 2024, respectively. *See* SAC ¶¶ 101, 106. Further, the SAC alleges that the Meta Pixel intercepted users' private communications with Verogen, including the fact that they had undergone genetic testing, along with the activities of the user on GEDmatch.com, and at a minimum, information that the user had uploaded their DNA file to GEDmatch.com. *Id.* ¶¶ 13, 152.

Plaintiffs argue that the SAC alleges that the Meta Pixel "can follow a consumer to different websites and across the Internet even after clearing browser history, and discloses a variety of Private Information beyond uploaded genetic tests." ECF No. 37 at 32. Further, Plaintiffs argue that the SAC alleges that the Meta Pixel disclosed "how long users spend on a particular web page, which buttons the users clicks, which pages they view, the text or phrases they type into various portions of the website, including their mitochondrial and Y haplogroup results from their DNA test and the kind of DNA test users took, and the fact that GEDMatch's users uploaded their DNA file to GEDMatch." *Id.* (quoting SAC ¶¶ 143-145). However, as discussed above in the Metal Pixel claims and the Pre-Pixel Timing, Plaintiff Cook does not allege that she engaged in any subsequent activity on GEDmatch.com, during the period the Meta Pixel was operational after her initial upload in 2017. *See generally* SAC. Accordingly the Court **GRANTS** the Motion with respect to Plaintiff Cook. The CIPA claim is **DISMISSED** without prejudice and with leave to amend.

Defendant argues that with respect to Plaintiff Novida, he was previously a plaintiff in *Nichols, et al. v. Meta Platforms, Inc.*, originally filed in California state court on April 9, 2024, and was added as a plaintiff in that action on August 21, 2024. ECF No. 34 at 12. In the *Nichols* matter, Plaintiff Novida alleged that he uploaded his DNA kit in 2024, as similarly alleged in this case. SAC ¶ 105. Defendant argues that Plaintiff Novida would have had to upload his DNA kit prior to August 21, 2024, the day he was added as a plaintiff in the *Nichols* matter and his CIPA claims exceed the statute of limitations. Defendants' argument carries merit, however this argument appears to turn on a disputed factual issue that is not appropriate at the pleading stage. *See Anthony*, 2025 WL 4076514, at *6. The SAC alleges that during the time period relevant to this action Defendants "repeatedly disclosed to multiple third parties the genetic information uploaded by Plaintiffs." SAC ¶ 126. Thus, the Motion to Dismiss the CIPA claim with respect to Plaintiff Novida and the statute of limitations is **DENIED**.

**2. Rule 12(b)(6)**

Defendants argue that the SAC fails to allege that Verogen aided and abetted Meta to read or attempt to read the content of any alleged communications. ECF No. 34 at 13. Specifically, Defendant argues that the mere fact that someone uploaded a DNA file to GEDmatch.com does not convey the content of any communication to GEDmatch.com. *Id.* at 14. However, the SAC alleges that the Meta Pixel captured "the text or phrases [Plaintiffs] type into various portions of the website, including their mitochondrial and Y haplogroup results from their DNA test and the kind of DNA test users took." SAC ¶ 144.

The analysis for a violation of CIPA is the same as that under the federal Wiretap Act. *Underhill v. Kornblum*, No.:16-CV-1598-AJB-WVG, 2017 WL 2869734, at *6 (S.D. Cal. Mar. 16, 2017) (citing *Sunbelt Rentals, Inc.*, 43 F. Supp. 3d 1026, 1033). The federal Wiretap Act defines "content" to include "any information concerning the substance, purport, or meaning of [a] communication." 18 U.S.C. § 2510(8). "Contents" refers to the "intended message conveyed by the communication"—it does not include record

information regarding the characteristics of the message that is generated in the course of the communication. *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014).

The allegations in the SAC are sufficient at the pleading stage. *See Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1198-99 (N.D. Cal. 2024) (sustaining CIPA claim because the complaint alleged "the kinds of information that the [Pixel] technology would have been able to transmit, and it alleges the mechanism for transmission."); *In re Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795, 798 (N.D. Cal. 2022) (sustaining CIPA claims where plaintiffs "put forward evidence that Meta receives information through the Pixel" and the information transmitted to Meta by its Pixel would "not merely reveal the name of a Facebook user or group.").

Thus, at the pleading stage, Plaintiff Novida plausibly alleges a CIPA violation and the Motion to Dismiss the CIPA claim with respect to Plaintiff Novida is **DENIED**.

**D. Qiagen Sale / Acquisition Claims**

The SAC alleges that Qiagen's acquisition of Verogen constituted a disclosure, compelled disclosure, or unauthorized use of Plaintiffs' genetic information, under the genetic privacy statutes of Alaska, Illinois, New Mexico, and Oregon. SAC ¶¶ 87–95, 122–129. The Court **GRANTS** the Motion and **DISMISSES** these claims, under Rule 12(b)(6) without prejudice, and with leave to amend.

**1. Rule 12(b)(1)**

Here too, the jurisdictional inquiry is intertwined with the merits. *Safe Air for Everyone*, 373 F.3d at 1039–40. These issues should not be conflated, and resolution is inappropriate at this stage. *Id*. The Rule 12(b)(1) challenge to the Sale Claims is, therefore, **DENIED**.

**2. Rule 12(b)(6)**

The SAC alleges that Verogen "sold its GEDmatch.com and GEDmatch PRO databases, along with the rest of the company, to Qiagen for $150 million." SAC ¶ 128. "As part of the sale, Verogen gave Qiagen 'full access to Verogen's pioneering GEDmatch database and GEDmatch PRO portal.'" *Id.* ¶ 129 Plaintiffs further allege that Qiagen

subsequently entered into commercial arrangements with Bode Technology and Othram leveraging access to GEDmatch PRO tools. *Id*. ¶¶ 173, 234, 299.

The Court agrees with Defendants that these allegations, as presently pled, do not adequately connect Qiagen's acquisition and post-acquisition conduct to a prohibited disclosure, retention, or use of the named Plaintiffs' specific genetic information. The Seventh Circuit's analysis in *Bridges v. Blackstone, Inc.*, 66 F.4th 687, 689–90 (7th Cir. 2023), is instructive. There, the complaint alleged only that Blackstone acquired Ancestry.com and thereby gained access to its customers' genetic data. *Id.* at 689. The court held that plaintiff failed to state a claim because a standard corporate acquisition, without additional allegations that a specific term of the deal mandated a prohibited disclosure, did not plausibly establish that Blackstone "compelled" disclosure within the meaning of Section 30 of the Illinois GIPA. *Id.* at 689-90 (finding that "without more alleged about the transaction," a plaintiff cannot plausibly infer that a corporate acquisition results in compulsory disclosure under the statute).

Here, the SAC does not allege with the requisite particularity that any term of the acquisition agreement mandated a prohibited disclosure of each named Plaintiff's protected genetic information, or that Qiagen's post-acquisition commercial activities specifically involved access to or use of the named Plaintiffs' individual DNA profiles. The Court, therefore, finds that Plaintiffs fail to state a plausible claim for relief based on their Sale Claims theory of liability.

**3. Express Consent**

The Court also notes that GEDmatch's TOS expressly provides that GEDmatch "reserves the right to provide access to your data . . . to those other individuals or entities" in the event of a merger or transfer of operations. ECF No. 18-2 at 7. This consent provision weighs squarely against the plausibility of the disclosure claims, as currently pled, and reinforces the Court's conclusion that the SAC alleges insufficient factual detail to state a viable Sale Claim.

The Court, accordingly, **GRANTS** the Motion with respect to the Sale Claims, which are **DISMISSED** without prejudice.

On amendment, Plaintiffs should plead each state-law claim with specificity as to the particular statutory prohibition, the particular Defendant is alleged to have violated, and the particular named Plaintiff asserting it.

## IV. LEAVE TO AMEND

The Ninth Circuit generally requires that leave to amend be granted unless amendment would be clearly futile. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009). The deficiencies identified above are not incurable. The Court, thus, **GRANTS** Plaintiffs Leave to File a Third Amended Complaint, as to the dismissed claims.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART** as follows:

(1) The Motion to Dismiss the First Cause of Action is **GRANTED WITHOUT PREJUDICE** and with leave to amend;

(2) The Motion to Dismiss the Second Cause of Action is **GRANTED WITHOUT PREJUDICE and** with leave to amend;

(3) The Motion to Dismiss the Third Cause of Action is **DENIED** as to the Law Enforcement Claims brought by Hutcheson; the pre-Pixel upload transmission theory is **GRANTED WITHOUT PREJUDICE** with leave to amend as to Hutcheson and Lafler; and the FID identification and fact-of-genetic-testing theories are not dismissed;

(4) The Motion to Dismiss the Fourth Cause of Action is **GRANTED WITHOUT PREJUDICE** with leave to amend;

(5) The Motion to Dismiss the Sixth Cause of Action is **GRANTED WITHOUT PREJUDICE** with leave to amend as to the pre-Pixel upload transmission theory; the FID identification theory is **DENIED**;

(6) The Motion to Dismiss the Seventh Cause of Action is **DENIED;**

(7) The Eighth Cause of Action is **GRANTED WITHOUT PREJUDICE** with leave to amend;

(8) The Motion to Dismiss the Tenth Cause of Action is **DENIED** as to the Law Enforcement Claims brought by Taylor; the pre-Pixel upload transmission theory is **GRANTED WITHOUT PREJUDICE** with leave to amend as to Delk and Taylor; and the FID identification theory is **DENIED**;

(9) The Motion to Dismiss the Eleventh Cause of Action is **GRANTED WITHOUT PREJUDICE** with leave to amend;

(10) The Motion to Dismiss the Twelfth Cause of Action is **GRANTED WITHOUT PREJUDICE** with leave to amend as to Plaintiff Cook and **DENIED** as to Plaintiff Novida;

(11) Plaintiff shall have until **October 21, 2026**, to file an amended complaint.

(12) Pursuant to the Court's prior Order, (ECF No. 49), Meta's deadline to answer the SAC was contingent on the Court's ruling on the Motion. ECF Nos. 48, 49. In light of this ruling and the Court's decision to grant leave to amend, the Court **ORDERS** Meta to **FILE** its response to the Third Amended Complaint within twenty-one (21) days of its filing.

**IT IS SO ORDERED**.

Dated: September 30, 2026

Honorable James E. Simmons Jr.
United States District Judge